## WILLIS & CONNER et al. v. TURNER et al.
### No. 893.

Court of Civil Appeals of Texas. Waco.
Jan. 30, 1930.
Rehearing Denied March 6, 1930.

William Sleeper, Allan McDonnell, and R. L. Henderson, all of Waco, for appellants.

Barney A. Garrett, of Waco, for appellees.

GALLAGHER, C. J.

This suit was instituted by Daisy Turner, hereinafter called appellee, against Ernest Turner for divorce and for partition of the community property. The property sought to be partitioned consisted of two lots, designated for the purposes of this opinion as lots 20 and 21 in Waco, and the household and kitchen furniture situated in the house on lot 20.

W. S. Willis and G. S. Conner, doing business under the firm name of Willis & Conner, and hereinafter designated as appellants, intervened and claimed title to lot 20 and a vendor's lien on lot 21. They made Nannie Turner a party to the suit. They alleged, in brief, that Willis & Conner Realty & Construction Company, a corporation, on July 8, 1913, sold said lots 20 and 21 to Nannie Turner for the sum of $400; that said corporation built two houses thereon for Nannie Turner. They alleged that the cost of said houses was $850 each, amounting in the aggregate to $1,700, and that such indebtedness was evidenced by notes recited in said deed and secured by vendor's lien retained therein and by deed of trust executed by Nannie Turner. They further alleged that thereafter, on January 23, 1923, the balance due on said indebtedness in the sum of $1,660 was by Nannie Turner duly renewed by new notes; that such notes were payable in installments, the last of which was payable five years after date; that a new deed of trust was then and there given by Nannie Turner to secure said renewal notes. They further alleged that said renewal notes were on the same date sold and transferred by said corporation to them as individuals; that on August 9, 1927, payments on said indebtedness being in arrears, Nannie Turner conveyed both said lots to them in cancellation of such indebtedness. They further alleged that such indebtedness and their title to said land were superior to any rights of appellee, and that if they failed to recover possession of said lots, they should have judgment for their debt and for a foreclosure of their lien thereon.

Ernest Turner disclaimed any interest in lot 20, and during the progress of the trial in open court agreed, in consideration of the withdrawal by appellee of her claim against him for attorney's fees, to waive and disclaim all right, title, and interest he had or might have in and to said lot, the house situated thereon, and the household furniture therein. He also filed a cross-action for divorce on the ground of cruelty. Nannie Turner also disclaimed any interest in lot 20, but claimed fee-simple title in her to lot 21 under a deed of reconveyance to her from appellants.

Appellee Daisy Turner, in reply to appellants' petition of intervention, pleaded the several statutes of limitation. She further alleged that she and Ernest before their marriage purchased lot 20 from Nannie Turner, erected the house thereon, and paid $750 therefor; that they moved into and occupied said house as a home; that she had continued to reside therein from that time (July, 1914) to the time of trial; that Nannie Turner, when she sold said lot to them, agreed to execute a deed to them therefor; that they agreed to pay their part of her notes to said corporation; and that they had long since done so. She further alleged that when Nannie Turner executed the renewal notes and new deed of trust on January 23, 1923, as aforesaid, all such indebtedness was barred by the statute of limitation of four years, and all claims of appellants against said lot 20 so occupied and claimed by her and her said husband were by virtue of such statute, which she specially pleaded, discharged and rendered null and void. She further alleged that on August 29, 1927, immediately after Nannie Turner had conveyed both said lots to appellants, they reconveyed lot 21 to her, and that all the same was done in pursuance of a conspiracy between her estranged husband, Ernest Turner, his mother, Nannie Turner, and appellants to defeat her rights in said property.

Appellants pleaded in reply thereto that the rights claimed by appellee were based upon an oral contract, and specially pleaded the statute of frauds.

R. L. Henderson, hereinafter designated as intervener, intervened and alleged that he had been employed to bring this suit and assert and secure for appellee the rights claimed by her herein, and that in consideration for said services appellee had assigned to him one-half interest in all she might recover herein. Appellee replied thereto that said intervener did not represent her, but attempted to coerce and compel her to accept in settlement of her property rights a compromise negotiated by him; that he refused to protect

her interests and used harsh language to her on account of her refusal to accept such compromise; that she was justified in discharging him; and that the consideration for any assignment claimed by him of an interest in her recovery herein had failed. The contentions raised by said intervener are separable from the main controversy and will be discussed after the issues between appellants and appellee are disposed of.

The facts pertinent to the issues of law discussed herein will be stated in connection therewith.

There was a trial by jury. No issue with reference to the right to divorce was submitted or requested. The court awarded the divorce to Ernest Turner, and no complaint of such action is made. The substance of the findings of the jury in response to all the issues between appellants and appellee submitted for determination is here given, except issues 1 and 9 and 11, between which appellants claim an irreconcilable conflict exists. Said issues as submitted and the answers of the jury thereto are given in full in their proper places, respectively.

1. "At the time that Ernest Turner and Daisy Turner went into possession of lot 20, in controversy in this case, did they have an agreement with Nannie Turner that said Ernest Turner and Daisy Turner should occupy said lot 20 and the house thereon as their home, and that upon the payment of the purchase price of said lot and the agreed price for the building of the house thereon by said Ernest Turner and Daisy Turner, that the same should become their property and that they should be given a deed thereto?" Answer: "Yes."

2. At the time appellants conveyed said lot 20 to Nannie Turner and constructed the house thereon, they knew of the existence of such agreement.

3. Ernest Turner and Daisy Turner paid the purchase price of said lot 20 and the agreed cost of the house placed thereon to appellants.

4. The money paid by Ernest and Daisy Turner to appellants was paid as purchase money for the house and lot in question, and not as rent for the use of the same.

9. "Was the agreement, if any, had between Ernest Turner and Nannie Turner in reference to possession of lot 20 and acquisition of title thereto, had by Ernest Turner prior to his marriage to Daisy Turner?" Answer: "Yes."

10. It was not agreed between Nannie Turner and Ernest Turner that he should be entitled to possession of said lot 20 so long as he used and occupied the same.

11. "Did Ernest Turner and Daisy Turner have any agreement with Nannie Turner that upon payment of the purchase price for lot No. 20 in controversy and the price for the building thereon, they should receive a deed when Nannie Turner had completed her payments on both lots 20 and 21 to the holders of the original purchase money notes and liens therefor?" Answer: "Yes."

12. Ernest Turner and Daisy Turner paid Nannie Turner the purchase price for said lot.

Appellants did not file a motion to set aside said findings, or any of them, for lack of sufficient support in the evidence. On the contrary, they filed a motion asking for judgment in their favor thereon, or, in the alternative, for a new trial on account of alleged conflict between issues 1 and 9 and 11 as aforesaid. Said motion was overruled. Appellee moved for judgment in her favor, and her motion was granted. The court thereupon rendered judgment in favor of appellee against all the other parties to the suit for title and possession of said lot 20, together with the building thereon and all household furnishings and equipment contained therein. Judgment was also rendered disposing of all the other issues and parties in the case, which disposition, except as to intervener Henderson, is immaterial and need not be further recited. Both appellants and intervener Henderson have appealed.

### Opinion.

Appellants' first proposition presents as ground for reversal the action of the court in overruling their request for a peremptory instruction in their favor for the title and possession of said lot 20. Appellants contend in this connection that the undisputed testimony shows that the Willis Realty & Construction Company conveyed both lots 20 and 21 to Nannie Turner, retaining a lien against both of them to secure the sum of $1,700; that a part of such indebtedness remains unpaid; that appellants were not shown to have consented to apportion such indebtedness between said two lots; that appellee's rights grew out of a verbal agreement made before her marriage; that by the terms of such agreement she and Ernest were to receive a deed therefor when all payments were completed; and that a part of the purchase price of said lot had never been paid by them, or either of them, to said Nannie Turner.

The parties to this case, except intervener Henderson, are all negroes. It appears circumstantially at least from the testimony as a whole that all the Turners were more or less uneducated and inexperienced in business affairs. Most of the testimony favorable to the contentions of appellee was given by her. It reveals some inconsistencies and contradictions and some circumstances tending to discredit a part thereof. The same may be justly said of the testimony introduced by appellants. Only a limited statement of appellee's testimony need be made. She testified in substance that Nannie Turner was considering the purchase of said lots; that she

646

urged Ernest to take lot 20, build on it, and reside on it after his marriage to appellee, which was then in contemplation; that appellee and Ernest together made a small partial payment on the purchase price of said lot to Nannie Turner, and that Nannie also gave Ernest a further credit on such purchase price out of the proceeds of other property sold by her; that Nannie told him to go ahead and build his house on said lot and that when he got such house paid for she would give him a deed to said lot; that appellee and Ernest made a contract with appellants to build the house for them for the sum of $750, and that they promised to pay appellants therefor the price agreed upon, with 8 per cent. interest thereon until paid; that such payments were to be made at the rate of $2.50 per week; that appellants did build said house as they agreed to do; that thereafter appellee and Ernest were married therein, and that she has resided therein continuously from that time until the trial of this case; that she and Ernest continued such payments to appellants with substantial regularity until some time in the year 1927, and that they had thereby paid in full for said house and for any balance of the purchase money due on the lot. She further testified that she never knew anything about the details of the transaction between appellants and Nannie Turner and that neither she nor Ernest ever promised to pay Nannie Turner for said house. The several recorded instruments pleaded as hereinbefore shown were all introduced in evidence. According to the original deed from Willis & Conner Realty, & Construction Company to Nannie Turner, the last note of the indebtedness described therein matured on June 8, 1918, five years after its date. All such indebtedness was therefore more than four years past due on January 23, 1923, when Nannie Turner executed the renewal notes and the new deed of trust to secure the same. There is no contention that any prior extension of said indebtedness, or any part thereof, had been made. There is no contention that appellee or her husband authorized such renewal and extension, and no testimony that they knew of such action at the time. In addition to the testimony of appellee above quoted that Nannie Turner promised unconditionally to give Ernest a deed to said lot when he had fully paid for his house thereon, she further testified affirmatively that she and Ernest had not only paid appellants in full for said house, but had also paid to them for Nannie Turner the balance, if any, due her on said lot.

■■ The court in passing upon a request for a peremptory instruction is required to view the testimony as a whole and in all its phases, without regard to what issues, if any, may be thereafter submitted or what issues may thereafter be waived by failure to request their submission. Appellee's testimony was sufficient, we think, to raise an issue of

an equitable interest in and to said lot and the house thereon in her and Ernest, which could not be affected by the attempted but unauthorized revival in favor of appellants of the cause of action on said notes and the lien which had theretofore secured the same. First National Bank of Alvarado v. Lane (Tex. Civ. App.) 265 S. W. 763, 765, 766 (writ refused), and authorities there cited. We do not think that the contentions so urged by appellants either required or justified the giving of a peremptory charge in their favor, and their first proposition is overruled.

■ Appellants by their second proposition contend that appellee's claim to said lot is unenforceable on account of the provisions of our statute of frauds (Rev. St. 1925, art. 3995). This contention is based on their further contentions that the undisputed testimony shows that the terms of the oral agreement of purchase from Nannie Turner were never complied with by payment of the entire purchase price, and that the house constituting the principal improvement placed on said lot was built before appellee and Ernest were married and actually resided thereon. In addition to the testimony above quoted, appellee testified with reference to the payment of purchase money for the lot as follows: "Our home is paid out and that is lot 20." According to appellee's testimony, she and Ernest employed appellants to build the house which was erected on said lot. The entry upon said lot by contractors employed by them for the purpose of building a house thereon for them, with the knowledge and consent of Nannie Turner, the erection of such house, and the subsequent occupancy of the same by appellee and Ernest, were sufficient to raise an issue of such possession and valuable improvements as to take the oral agreement out of the inhibition imposed by the statute. Appellants' second proposition is therefore overruled.

■■ Appellants by their third proposition contend that the court erred in overruling their motion to set aside the verdict of the jury and declare a mistrial, on the ground that there is an irreconcilable conflict between special issue No. 1 and special issue No. 11, both of which were answered by the jury in the affirmative. Said issues have been hereinbefore set out in hæc verba. Special issue No. 1 seems to have been prepared by the court. Special issue No. 11 was requested by appellants. While incorporated in the general charge of the court, it was submitted in the exact language chosen and used by appellants in making such request. The essential facts submitted for determination by each of said issues are substantially the same. The only point of conflict contended for by appellants is with reference to the time at which appellee and Ernest were to receive from Nannie Turner a deed to said lot. According to their contention, the jury, by returning an af-

firmative answer to special issue No. 1, found that they were to be entitled to such deed immediately upon completing payment for both lot and house, and by returning an affirmative answer to special issue No. 11, found that they were to be entitled to such deed only when Nannie Turner had discharged the original vendor's lien on both lots. We doubt whether the evidence raised the latter issue. Appellee pleaded and testified that Nannie Turner promised to give her and Ernest a deed to lot 20 when they had paid therefor and had paid for the house which they were to erect and did erect thereon. Appellants introduced testimony tending to show that no oral contract of purchase was ever made by Nannie Turner with appellee and Ernest Turner, but that, on the contrary, Nannie Turner had appellants build the house on said lot 20 for the express purpose of renting the same and applying the rents to the discharge of her indebtedness to them. They also introduced testimony tending to show that appellee and Ernest in their occupancy of said lot 20 and the house thereon admitted that they were tenants of Nannie Turner, and that all the moneys paid by them to appellants were paid as rent for the use and occupancy of said premises, and that such payments were made direct to them to be applied on Nannie Turner's indebtedness to them by agreement of all the parties. The affirmative answer of the jury to special issue No. 1 constituted a finding that upon full payment for a lot and house the same should become the property of appellee and Ernest. This was the real issue in the case. Even if there had been no promise of a deed, their action in taking possession, erecting, and occupying said house, and their further compliance with said agreement by making such payments, would have invested them with an equitable title to said lot. There is nothing in the affirmative answer of the jury to special issue No. 11 in conflict with such finding. Both said special issues make the promise to execute a deed dependent on full payment of the purchase price of the lot and the house erected thereon. Both of them involve an affirmative promise by Nannie Turner to give such deed. The only difference between them is that special issue No. 11 adds a further condition deferring actual execution and delivery of such deed until Nannie Turner had discharged the vendor's lien on said lots. We do not regard such difference, under the facts of this case, material. According to the finding of the jury in response to special issues 3 and 12, appellee and Ernest had paid in full for said lot and for the house erected thereon. Said house and lot had therefore, under the finding of the jury in response to special issue No 1 as hereinbefore shown, become their property. Nannie Turner had repudiated the entire transaction and had conveyed the lot to appellants, and thereby rendered compliance with her promise ineffective, if not impossible. Appellants' third proposition is overruled.

■■ Appellants by their fourth proposition contend that the court erred in overruling their motion to set aside the verdict of the jury and declare a mistrial, on the ground that there is an irreconcilable conflict between special issue No. 1 and special issue No. 9, as hereinbefore set out. The specific contention is that the finding in response to issue No. 1 is that the oral contract of purchase was made between Nannie Turner and both Ernest and appellee, and that the finding in response to issue No. 9 is that such contract was made between Nannie Turner and Ernest alone. Special issue No. 9, while incorporated in the court's general charge, was also requested by appellants and submitted in the exact language chosen by them. Special issue No. 1 submitted to the jury for determination whether the oral agreement of purchase therein described was in fact made between Nannie Turner and Ernest and appellee. Special issue No. 9 as requested and submitted did not inquire whether there was such an agreement, nor, if so, whether the same was between Nannie Turner and Ernest alone or between her and both Ernest and appellee. Said issue as submitted in effect assumed the existence of an oral agreement of purchase between Nannie and Ernest, and merely inquired whether such agreement was made before Ernest's marriage to appellee. The questions submitted and the findings of the jury in response thereto must be read and construed as a whole, and should be given the effect and be held to have the meaning that the average juryman would place on them and give them. First Nat. Bank of Amarillo v. Rush (Tex. Com. App.) 246 S. W. 349, 353, par. 1; Cowan v. El Paso Electric Ry. Co. (Tex. Com. App.) 271 S. W. 79, 80, par. 3; Bounds v. Magnolia Petroleum Co. (Tex. Civ. App.) 1 S.W.(2d) 738, 739, par. 2. We think it reasonably appears that the answer of the jury to issue No. 9 constitutes merely a finding as to the time at which the oral contract inquired about was made with reference to the time of the marriage of Ernest and appellee, and that no real conflict exists. Appellants' said proposition is overruled.

■ Appellants by their fifth and last proposition contend that the court erred in refusing to permit them to open and close the argument to the jury. The substance of the pleadings of appellants and appellee has been hereinbefore set out. Both appellants and appellee alleged the original sale of both lots to Nannie Turner, the reservation of the vendor's lien to secure certain indebtedness described in the deed thereto, the renewal by Nannie Turner of such indebtedness, the execution of a new deed of trust to secure same, and the subsequent sale of both lots to appellants in discharge of the balance due on the

original indebtedness. As ground for recovery of lot 20, appellee pleaded the contract for the purchase thereof from Nannie Turner, compliance with the terms of such contract, and possession and valuable improvements thereunder, and sought to recover therein against appellants, who held the legal title. She also pleaded payment to and acceptance by appellants' of the proportionate part owed by her and Ernest of the original indebtedness on said lot with full knowledge of all the facts. The burden under both pleadings and evidence was upon her to establish affirmatively by a preponderance of the evidence the material facts submitted for determination by the jury by issues 1, 2, 3, 4, and 12. While issues 9, 10, and 11 were submitted at the request of appellants, they were answered in accordance with the contentions of appellee. The affirmative finding of the facts submitted for determination thereby was not necessary to entitle appellee to a judgment, in view of affirmative findings in her favor upon the other issues submitted. The judgment of the court would necessarily have been the same had said three issues never been requested nor submitted.

Article 2183 of our Revised Statutes is in part as follows: "The party having the burden of proof on the whole case shall be entitled to open and conclude the argument; where there are several parties having separate claims or defenses, the court shall prescribe the order of argument between them."

Appellee was suing for decree of divorce against Ernest and for recovery of title to lot 20 and the improvements thereon against all the defendants. She was also resisting the claims of intervener Henderson, and he was asking affirmative relief against her. Ernest Turner was denying her right to a divorce from him and seeking a decree of divorce against her on her cross-action. Appellants insist that the application of the statute above quoted must be determined by the issues submitted to the jury and the parties to be affected thereby, and that therefore since the principal issues submitted to the jury were issues arising between them and appellee, the application of the statute in this case must be determined as though they and appellee were the only parties thereto. Applying the test prescribed by the statute upon the theory contended for by appellants, we think that it cannot be properly said that the burden of the whole case rested on them. See, in this connection, First State Bank v. Cooper (Tex. Civ. App.) 179 S. W. 295, 296–299, par. 5, and authorities there cited; Baum v. Sanger (Tex. Civ. App.) 49 S. W. 650, 651, par. 2; Cooper v. Marek (Tex. Civ. App.) 166 S. W. 58, 60, par. 4 (writ refused); Fulwiler Electric Co. v. Smith (Tex. Civ. App.) 250 S. W. 725, 726, par. 2; Caldwell v. Auto Sales & Supply Co. (Tex. Civ. App.) 158 S. W. 1030, 1032, par. 5. The principal case cited and relied on by appellants is Knight Realty Co. v. Williams (Tex. Civ. App.) 193 S. W. 169, 170, par. 2. The appellee Williams was plaintiff in said cause. He instituted suit against one Hogue to recover $720 alleged to be due him by the defendant as commissions for effecting an exchange of property. The defendant Hogue admitted the material allegations made by plaintiff Williams and paid the money into court. The appellant Knight Realty Company, a partnership, intervened and pleaded an agreement between them and Williams that the commissions paid in such transaction should be equally divided between them. If the Knight Realty Company had failed to support their contention by affirmative proof or had failed to secure a finding in their favor upon the evidence introduced by them, Williams would have been entitled to a judgment for the money so paid into court. The situation of appellants in this case is not analogous to the situation of the intervener Knight Realty Company in that case, but the reverse. In this case, if appellee had failed to support her contentions by affirmative proof or had failed to secure findings in her favor upon the evidence so introduced by her, appellants would have been entitled to recover upon their uncontroverted legal record title. She occupied a position analogous to the position of the Knight Realty Company in the case cited, rather than appellants. Said proposition is overruled and the judgment in favor of appellee against appellants will be affirmed.

The issues presented to this court for determination by appellant Henderson, being separate and distinct from the issues between appellants and appellee, have been reserved for separate consideration. The pleadings of intervener and appellee's reply thereto have been hereinbefore stated. The jury found in response to special issues submitted for their determination, in substance: (5) That appellee executed to intervener an assignment of an undivided one-half interest in whatever she might recover in this suit; (6) that intervener did not stand ready and willing to represent appellee in the prosecution of this case; (7) that appellee discharged him; (8) that the reasonable value of the services rendered by him prior to discharge was $40. Intervener admitted that he had received the sum of $20 from appellee at the time of his employment. The court therefore rendered judgment on the verdict of the jury in his favor against appellee for the sum of $20.

Intervener, by an appropriate proposition, assails the finding of the jury to the effect that he did not stand ready and willing to represent appellee in the prosecution of this case, as being without any sufficient support in the evidence. Intervener testified that he filed this suit and represented appellee from

the 17th day of September, 1927, until the attempted settlement in July or August, 1928; that the only reason the suit was not tried prior to the time of the trial was that appellee did not want to go ahead with it; that he stood ready and willing to try her suit or accept a settlement; that he never refused to prosecute it and carry it out; that there had never been any friction between them. He further testified that she phoned to him one day and said, "I believe I will just drop it"; that he replied, "Well, if you are going to drop it of course my services are due"; that the next he heard appellee had employed Mr. Garrett, another attorney, who represented her in this trial; that he never made threats to appellee, but did tell her that appellants might ultimately throw her out. He further testified that he had not been asked to participate in the present trial and was not consulted about surrendering the case to any one else; that he did state to counsel now representing appellee that he had authority to settle the case and probably ought to do so.

The trial was had April 3, 1929. Subsequent to appellee's refusal to accept the compromise negotiated by intervener, the exact time not being indicated, appellants filed forcible entry and detainer suit against appellee. Appellee testified that intervener would not represent her in that case and that that was when she first consulted counsel now representing her. Intervener testified in this connection that he told appellee that he would not represent her therein unless she employed him to do so; that if he or somebody did not represent her in that case, they would take judgment against her; and that he did not feel like representing her if she did not want him to. Nothing further with reference to this proceeding is shown. Shortly before the trial of this cause, appellants filed an application herein for a receiver of the property in controversy. Notice thereof was served on appellee, and she turned such notice over to counsel representing her in this case. No action on such application is shown in the transcript.

Appellee testified that the reason she did not go on and get her divorce at first was because she had claimed a half interest in the place; that she discharged intervener because he abused her. No affirmative action on the part of intervener after appellee rejected the offer of compromise is shown. His intervention in this case was in his own right. He did not assert an interest in the cause of action and seek judgment therefor against the other parties to the suit, but limited his prayer to participation in whatever appellee might recover herein.

■■■■ An appellate court, in determining whether a finding of the jury should be set aside for lack of sufficient support in the evidence, must consider only the facts and circumstances which tend to sustain the same, rejecting all evidence unfavorable thereto. Cartwright v. Canode, 106 Tex. 502, 171 S. W. 696, 697, 698; San Antonio Machinery & Supply Co. v. Central Texas P. & T. Co. (Tex. Civ. App.) 295 S. W. 229, 231, par. 1; First Texas Prudential Insurance Co. v. Sorley (Tex. Civ. App.) 272 S. W, 346, 349, par. 1; Dickson v. Kilgore State Bank (Tex. Com. App.) 257 S. W. 867, 868, par. 2; Manning v. Goolsby (Tex. Civ. App.) 292 S. W. 589, 590, par. 4; Moore v. Porter (Tex. Civ. App.) 281 S. W. 232, par. 2; G. H. & S. A. Ry. Co. v. Tapley (Tex. Civ. App.) 268 S. W. 491, 492, par. 1. The jury were authorized in connection with the affirmative evidence to consider all the facts and circumstances disclosed thereby. Applying the rule announced in the authorities cited, we cannot say that the finding of the jury complained of is without support in the evidence.

■■■■ Intervener presents a proposition complaining of the action of the court in refusing on objection of appellee to permit him to testify in his own behalf that at the time appellee declined to accept the compromise negotiated by him he advised her "that it was up to her to either take the proffered settlement or go on and try the case," and that she replied thereto: "Lawyer Henderson, Ernest (her husband) has been so mean to me that I just want to stay there and torment him, I don't care if I lose everything and they do put me out, he wants a divorce now and I just want to stay there and torment him because I don't care about no divorce." Appellee's objection to the introduction of said evidence was that such statement was a confidential communication between attorney and client, and therefore privileged. Intervener testified, apparently without objection, that the only reason the suit was not tried prior to the time of trial was that appellee did not want to go ahead with it; that she phoned him one day and said: "I believe I will drop it" (referring to the suit).

We do not deem it necessary to determine whether the excluded testimony was inadmissible as a privileged communication between attorney and client or not. The relevancy of such declaration consists solely in so far as it tends to show that appellee desired the case to remain on the docket without action. Intervener was permitted, as above shown, to testify specifically that the reason no action was taken was because appellee did not want to go ahead with the suit and that she had called him by telephone and announced her intention to drop it. The reasons given by her for not desiring to proceed with the suit were not material. We do not think that intervener suffered any injury by reason of the court's refusal to permit him to introduce the testimony so offered and excluded.

We have considered all the propositions submitted by intervener and are of the opinion that none of them present reversible error.

The judgment of the trial court is therefore affirmed as to all parties.