## HENDERSON v. BURKHOLDER.

### No. 1955.

Court of Civil Appeals of Texas. Beaumont.

June 3, 1930.

Caldwell, Gillen, Francis & Gallagher, of Dallas, for appellant.

J. W. Madden, Jr., and J. Hart Willis, both of Dallas, for appellee.

## O'QUINN, J.

Appellant sued appellee to recover $1,120, with interest, alleged to be commission due him by appellee for the sale of an order of "Colorcoat" plaster under an employment contract with appellee. The case went to trial on appellant's second amended original petition, in which it was alleged, in substance, that on or about April 27, 1927, appellee was engaged in the manufacture and sale of a plaster known as "Colorcoat," and that on or about said date appellant and appellee entered into a written contract wherein appellee granted appellant the exclusive right to sell "Colorcoat" plaster within the city of Dallas, Tex., except that appellee reserved the right to personally make sales in the city of Dallas; and wherein it was agreed that appellant would also have the right to sell said plaster anywhere within the state of Texas; and that appellee would manufacture the plaster necessary for the performance of the sales made by appellant and sell such plaster to appellant at a discount of 33⅓ per cent.; that after the making of said contract he learned that a church was to be built in Amarillo, Tex., by the Christy-Dolph Construction Company of Dallas, under the supervision of R. H. Hunt & Co. of Dallas, as architects, and that he immediately began an effort to sell said "Colorcoat" plaster to be used in the construction of said church; that he disclosed to appellee the facts concerning the construction of said church and requested appellee to assist him in securing a change in the specifications necessary to make the sale, and that, because of the benefit appellee would receive from such a large order, he agreed to assist appellant; that thereupon appellant arranged for a demonstration in his office to show the architects the advantages of said plaster, it being understood between appellant and appellee that appellant was endeavoring to make a sale of said plaster, and that appellee would assist in the making of the sale, and pay to appellant, under the terms of their said contract, his commission of 33⅓ per cent. of the list price; that after said demonstration of said "Colorcoat" plaster to the architects, appellant and appellee together called upon the contractor, Christy-Dolph Construction Company, and quoted them a price and urged them to purchase such quantity of "Colorcoat" plaster as they might need in the construction of said building; that appellant thereafter continued his efforts to effect a sale of said plaster to be used in the construction of said building, and that by reason thereof, and as a natural consequence thereof, the architects did select and specify "Colorcoat" plaster to be used in the construction of said building, necessitating the purchase of same by the contractor, he having authority to do so.

It was further alleged, in substance, that the architects, through their representative, Mrs. Carter, had reported to appellant that said plaster would be specified, and that the church committee would be notified and satisfied as to said change in the specifications for the erection of said building, but that said architects thereafter secretly and fraudulently entered into a conspiracy with appellee to defraud appellant of his commission by having appellee to make said sale of said plaster direct to the contractor, Christy-Dolph Construction Company; that in order to carry out said conspiracy said representative (Mrs. Carter), acting with the knowledge and consent of appellee, and for their mutual benefit, requested appellant to make no further effort to complete said sale, telling him that the specifications would be made and the church people satisfied, and that said architects did inform appellee, but failed to inform appellant, and that thereupon appellee, on or about August 31, 1927, closed the deal with the contractor for the purchase of sixty tons of plaster at a price of $56 per ton, amounting to $3,360.

It was further alleged that in the furtherance of his effort to make said sale of said plaster, appellant employed one C. M. Cleavenger, a relative of the said Mrs. Carter, as agent, to aid him in making sales of said plaster in North Texas, and that it was through the joint efforts of appellant and his said agent Cleavenger that the said Mrs. Carter (the representative of the architects) consented to attend the demonstration of the use and appearance of "Colorcoat" plaster in appellant's office, and that said Mrs. Carter did attend said demonstration and was favorably impressed with the serviceability and appearance of said plaster.

It was further alleged that appellant and his said agent were the inducing and procuring cause of the architects specifying said plaster and the sale of same to the contractors to be used in the construction of said church building; that appellee could not and would not have made said sale of said plaster, except for the efforts of appellant and his said agent, and the action of appellee in completing said sale in the manner he did, and in refusing to pay appellant his said commission, was fraudulent and in violation of the terms of their said contract whereby appellee became and was liable to pay appellant his commission of one-third of the sale price of said plaster, $1,120.00, with 6 per cent. interest thereon from the date of said sale.

In the alternative, appellant alleged an implied contract on the part of appellee to pay him the usual, customary, and reasonable charge for his services in obtaining a purchaser for said plaster, which he alleged was one-third of the sale price, or the sum of $1,120, whereby he says appellee became bound to pay him that sum on a quantum meruit basis, with interest thereon at 6 per cent. per annum from the date of the sale.

Appellee answered by general demurrer, several special exceptions, and a general denial. The record does not disclose that any of these exceptions were acted on by the court.

The case was tried to a jury. At the conclusion of appellant's evidence, the court sustained appellee's motion for an instructed verdict, and accordingly the jury returned a verdict for appellee. Motion for a new trial was overruled, and the case is before us on appeal.

Appellant's first four propositions challenge the correctness of the court's instructing a verdict for appellee, and assert that same was reversible error, because:

(1) The evidence showed that, by virtue of a contract with appellee, appellant had been employed to sell "Colorcoat" plaster, a commodity manufactured and sold by appellee, on a commission basis specified in the contract, and that, because of appellant's efforts as the inducing and procuring cause, a sale of a large quantity of said plaster was effected at a price fixed by appellee, and, there being no evidence offered to the contrary, it was error for the court to instruct the jury to return a verdict for appellee, even though the formal order for the plaster by the contractor was given to appellee.

(2) That where the evidence showed and tended to show that appellant, by virtue of his contract with appellee giving him the right to sell "Colorcoat" plaster in the city of Dallas, on a commission basis, introduced a prospective purchaser to appellee, made known to appellee all the facts upon which the sale depended, and instituted negotiations with the prospective purchaser for the sale of said plaster, whether or not appellant's efforts were the procuring cause of the sale later made on the order of the contractors given to appellee was a question of fact for the jury, and the court's failure to submit the issue to the jury for their determination was reversible error.

(3) That where the evidence showed that whether or not a certain kind of plaster would be purchased by the contractor for the construction of a certain church building depended on whether or not the plaster should be specified by the architects, and that appellant, under his contract with appellee (who manufactured and sold said plaster), by putting on a private demonstration before the architects' agent, and by making repeated calls on the architects' agent, secured the architects' approval of the use of said plaster in the building of said church, so that the architects specified said plaster to be used in said building, and that appellant, in company with appellee, called upon the contractors and urged them to give the order for the plaster, and thereafter on numerous occasions called on the contractors concerning

the purchase of said plaster, whether or not said efforts of appellant to sell said plaster were the procuring cause of appellee's securing the order from the contractors was a question for the jury, and the court's failure to submit said issue to the jury for their determination was reversible error.

(4) That in a suit for commissions, based upon a written contract with appellee giving appellant the exclusive right to sell said plaster in the city of Dallas, "except such sales as may be made by the party of the first part (appellee) personally," where the evidence showed that appellant found a prospective purchaser and introduced him to appellee, and thereafter diligently and faithfully worked to complete the sale of the plaster, and would have completed the sale in person by securing the delivery of the order for said plaster to himself, except for the interference of the appellee, and appellee had the formal order for the plaster delivered to himself with the design and for the purpose of depriving appellant of his commission, whether or not such sale was a sale "made by party of the first part (appellee) personally" was a question of fact to be determined by the jury, and the refusal of the court to submit such question to the jury was reversible error.

We think the assignments should be sustained. The petition of appellant stated a cause of action and the evidence we think raised the issues pleaded. Appellee, defendant below, by moving for an instructed verdict, must be deemed to have admitted the truth of all the material evidence offered by appellant, plaintiff below, and of all inferences fairly and reasonably deducible therefrom. Henry v. Publix Theatres Corp. (Tex. Civ. App.) 25 S.W.(2d) 695. Every reasonable inference from the evidence must have been resolved in appellant's (plaintiff's) favor before the court would be warranted in giving a peremptory instruction for appellee. The written contract pleaded by appellant was in evidence. There was no denial of the acts and efforts of appellant, as the agent of appellee under said contract, in endeavoring to secure the order for the sale of the plaster. It is undisputed that appellant first learned of the intended building of the church, and that he at once, in the manner by him pleaded, got busy to secure an order for the plaster to be used in the construction of said building, and that he fully advised appellee of the matter and invited him to co-operate with appellant in securing the order for the plaster. When the contractors placed the order appellee obtained it being given to him, and he refuses to recognize appellant as being entitled to any commission for obtaining, or being the procuring cause in obtaining, the order for the plaster, and seeks to justify his action under that clause of his contract with appellant which gives appellant the exclusive right to sell said plaster within the city of Dallas and its outlying suburbs, "except such sales as may be made by the party of the first part personally," claiming that the instant sale was made by him personally and came within the exception quoted noted in the contract, the order for the sale having been given by the contractors who resided in Dallas to appellee, who also resided in Dallas. In the written contract between appellant and appellee, appellee had given appellant the exclusive right to sell said plaster within the city of Dallas and its environs, and agreed to pay him on such sales 33⅓ per cent. of the list price of said plaster, except such sales as were made by appellee personally. We think the right reserved in the contract to appellee to personally make sales of the plaster should be held to mean sales made by him through his personal efforts disassociated from, outside of, and independently of, any action of his agent, appellant. To say that after his agent had first learned of a prospective buyer, and had actively and faithfully sought to make a sale, and had fully advised appellee of the facts, and had continuously and in concert with appellee sought to close the deal, appellee all the while acting with, and not independently of, his said agent, when the result of said efforts to make a sale had blossomed into fruit and the order for the plaster was to be given, appellee then could procure the order to be given to him personally, and thus defeat his agent from receiving his commission, would not only be a strained interpretation of the contract, but would be inequitable and unjust. Appellant had the right to have the jury pass upon whether he had proven the material allegations of his petition, and, if they so found, then to have judgment for his commission.

Furthermore, appellant alleged that appellee had concerted with others to prevent the order being given to him, and to secure its being given to appellee personally for the fraudulent purpose of depriving him of his commission. This issue alone would have required that it be submitted to the jury for their finding. Again, he pleaded properly, we think, in the alternative, that, because of his efforts known to and accepted by appellee, he had assisted in procuring the order for the sale of the plaster, and was entitled to his commission on a quantum meruit basis. Whether he had done so, and whether appellee accepted said services, knowing that appellant was to be remunerated, if at all, on a commission basis, was for the jury, and should have been submitted.

Other questions are presented, but, as they may not arise on another trial, they will not be discussed. The judgment is reversed, and the cause remanded.