## JONES et al. v. JONES.

### No. 3625.

Court of Civil Appeals of Texas. Amarillo. June 10, 1931.

Rehearing Denied July 11, 1931.

Bean & Klett, of Lubbock, for appellants.

Levens, McWhorter & Howard, of Lubbock, for appellee.

JACKSON, J.

This suit was instituted in the district court of Lubbock county, Tex., by the plaintiff Frank Jones, to recover the sum of $2,000 against the defendants Mrs. Florence Jones, a feme sole, and J. M. Jones, in their individual capacities and as executrix and executor of the estate of E. M. Jones, deceased.

The plaintiff alleges that he was engaged as a real estate broker by the defendants, who were the owners thereof, to procure a purchaser for section 28, block A, in Lubbock county, Tex., at $70 per acre, and that the defendants agreed to pay him 5 per cent. commission for his services.

In the alternative he alleges an implied contract with the defendants to pay him the 5 per cent. for his services, and also pleads his right to recover upon a quantum meruit.

He alleges that he was the procuring cause of the sale of said land to the city of Lubbock for an airport site. That the defendants accepted the city of Lubbock as a purchaser and consummated the sale by conveying said section of land to the city for the sum of $40,-000 in cash, and that by reason thereof the defendant became liable to him in the sum of $2,000, which they have failed and refused to pay.

The defendants answered by general and special exceptions and general denial. They specially pleaded in defense that the agency of plaintiff was not an exclusive one, but that the land was listed by the owners with many other parties, who were authorized to

find a purchaser for the land and make a sale thereof. That the plaintiff was not the procuring cause of the sale, but that the city of Lubbock as purchaser was procured through the labors and services of the defendants and other agents with whom the land was listed and certain civic organizations, among whom were George E. Benson, T. B. Duggan, Joe Dick Slaughter, the Lubbock Chamber of Commerce or Board of City Development. That these individuals and organizations first brought the owners and the city together by their efforts and thereby found the city of Lubbock as a purchaser and induced it to purchase the land and were the procuring cause of the sale.

That the other agents and organizations induced the defendants to reduce the price of the land from $70 per acre to the sum of $62.50 per acre, in consideration that such parties were donating their services and waiving all commission. That the plaintiff was informed of such reduction, and that no commission was being charged by the other parties or organizations and he joined in waiving his claim to commission and made no claim therefor. That by his conduct he led the defendants to believe there would be no commission, in consideration of which the defendants reduced the price, and that, if plaintiff ever had any claim for commission, which is denied, said claim was waived and abandoned in consideration of the reduced price agreed upon between the purchaser, the city of Lubbock, and the defendants.

In a supplemental petition the plaintiff urged a general demurrer and numerous special exceptions to the defendants' answer, pleaded a general denial, and alleged that he carried on negotiations for the sale of the land to the city of Lubbock with George E. Benson, who held himself out as the purchasing agent for the city, all of which was done with the knowledge and consent of the city, and the city thereby ratified in all things the representations and acts of George E. Benson in negotiating and finally consummating the sale. That the plaintiff has never claimed any commission against the city of Lubbock or the chamber of commerce or board of city development, but his claim is against the defendants.

In response to special issues submitted by the court, the jury found, in effect, that the plaintiff was the procuring cause of the sale to the city of Lubbock, and that he never agreed to waive his commission for the sale of the land by the defendants to the city.

On these findings the court rendered judgment that the plaintiff have and recover of and from the defendants the sum of $2,000 principal and $150 interest, from which judgment this appeal is prosecuted.

The appellants present as error the action of the trial court in refusing to direct a verdict in their behalf, because there was no testimony presenting an issue of fact for the determination of the jury, and that the testimony was wholly insufficient to support the findings of the jury on the issues submitted.

■ In determining whether a peremptory instruction should be given or whether there is testimony to support the findings of a jury in this case, only the testimony supporting plaintiff's claim may be considered, and we must accept as true the evidence supporting the findings of the jury on the issues presented. Roddy et al. v. Citizens' State Bank of Copeville (Tex. Civ. App.) 11 S.W.(2d) 652; M., K. & T. Ry. Co. of Texas v. Cunningham, 118 Tex. 607, 23 S.W.(2d) 343; Willis & Conner v. Turner (Tex. Civ. App.) 25 S.W.(2d) 642; Henry v. Publix Theatres Corporation (Tex. Civ. App.) 25 S.W.(2d) 695; Frazier v. Hanlon Gasoline Co. (Tex. Civ. App.) 29 S.W.(2d) 461; Henderson v. Burkholder (Tex. Civ. App.) 29 S.W.(2d) 937.

Without detailing the testimony, it is our opinion that tested by these authorities the court did not commit error in refusing to direct a verdict in appellants' behalf, and that there is sufficient testimony to support the findings of the jury on the issues submitted.

■ The appellants by proper assignments challenge as error the action of the court in refusing to submit their requested special issue asking the jury, in effect, whether one or more of the parties named in the defendants' answer, other than the plaintiff, was the procuring cause of the sale of the land of the defendants to the city of Lubbock.

The appellants had alleged that the plaintiff did not have the exclusive agency from the defendants for the sale of the land, that it was listed with other agents, and that George E. Benson, T. B. Duggan, and Joe Dick Slaughter, together with certain civic organizations, were the procuring cause of the sale.

The record discloses that, at a meeting of the board of city development and chamber of commerce on April 24, 1928, a committee, composed of George E. Benson, chairman, Joe Dick Slaughter, John Dalrymple, Roscoe Wilson, T. B. Duggan, and Charles A. Guy, was appointed to investigate the requirements of a municipal airport and to advise as to the necessity of securing such airport, etc.

Mr. T. B. Duggan testified that the land had been listed with him for sale upon a 5 per cent. commission before any action was taken relative to securing a municipal airport for the city of Lubbock; that he was acquainted with this particular tract of land; that on the Sunday following after his appointment by the board of city development on the airport committee, having in mind that the land would be a good place for an airport, he went out and inspected it; that he looked at numerous different sites, but always favored

this site because he thought it was the best. That, in the sale of the land by the appellants to the city, he was representing the city and not the appellants, and his efforts and purpose were to secure the most favorable price for the city. That the plaintiff never talked to him about the sale of said land to the city.

Mr. Joe Dick Slaughter testified that some time the latter part of May, about a month after he was appointed on the airport committee, he called on and interviewed Milt Jones and his brother in their office to find out whether or not they would be willing to sell this tract of land to the city for an airport site. That he advised them the object of his call. That they informed him they would sell on a cash basis for $80 per acre, but they finally agreed to take $70 per acre cash. That he informed them that he had been appointed on the airport committee, and in his opinion the section of land in question would be a good location for an airport and advised them the purpose for which the city wanted the land. That there was nothing said about any commission for services with the appellants, as he did not expect to receive any commission. That as a citizen he was representing the city of Lubbock on the airport committee. That, after this conversation with the appellants, he went directly to the office of George E. Benson, the chairman of the airport committee, and explained to him in detail the subject of the conversation he had had with appellants. That he was in the automobile business and was not a land agent. That, as he understood it, the duty of the airport committee was to select a site for an airport.

Mr. George E. Benson testified that, according to his recollection, the first person who ever put this land up to him as chairman of the airport committee was Mr. Joe Dick Slaughter. That, at the time Mr. Slaughter first mentioned it to him, he had had no communication or negotiations with the plaintiff about the land. That the plaintiff came to his office and said that he wanted him to take a ride with him, which the witness did. That, after they were out on the road and had gotten to the Jones property, the plaintiff said: "I want to show you this Jones land for an airport site." That he advised the plaintiff that the land had already been put up to the airport committee by Mr. Slaughter.

The plaintiff testified that his negotiations for the sale of the land were all with George E. Benson, as chairman of the airport committee. That he showed the land to Mr. Benson about July, 1928, and told him the price. He testified also that in his opinion it was August before he presented his proposition for the sale of the land, and that he does not remember doing anything prior to that time toward selling the land to the city.

Under the record in this case, as revealed by the pleadings and the testimony, we are of the opinion that the court erred in refusing to submit to the jury the special issue requested by appellants.

■ The law is settled that a defendant is entitled to have any defense which he pleads to plaintiff's cause of action, if supported by testimony, affirmatively submitted by the court to the jury for its determination, and a failure to submit such issue on request constitutes reversible error. Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517; Hutton v. Burkett (Tex. Civ. App.) 18 S.W.(2d) 740, 743; Safety First Bus Co. v. Skibinski (Tex. Civ. App.) 36 S.W.(2d) 288.

■ The appellants challenge as erroneous that part of the court's charge in which he advised the jury, in substance, that, even though they found that plaintiff was "not present and did not participate in the consummation of the sale," and although the "sale was made upon different terms from those discussed between the parties with whom the defendants dealt directly," if, through the efforts of Frank Jones, he brought the parties together, the plaintiff would be the procuring cause of the sale.

In view of the fact that appellants had pleaded that the appellee had waived his commission and were entitled to show, if they could, that he had abandoned his claim for commission and had offered testimony on the question of waiver, it is our opinion that this charge is erroneous.

Whether or not the charge would constitute reversible error if the only issue was whether or not the appellee was the procuring cause of the sale, it is unnecessary to determine.

■ The appellants urge as error the action of the trial court in failing to submit at their request the issue as to whether or not the plaintiff had abandoned his commission.

In our opinion, the testimony was not sufficient to present the issue of abandonment, and the court did not err in refusing this requested issue. Security Union Insurance Co. v. Hall (Tex. Civ. App.) 37 S.W.(2d) 811.

The judgment is reversed and the cause remanded.

### On Motion for Rehearing.

■ The appellee, in his motion for rehearing, among other things, presents as error the action of this court in reversing the judgment obtained by him against Florence Jones and J. M. Jones in their individual capacity, for the reason that he sued and obtained judgment against Florence Jones and J. M. Jones each in his individual capacity and as executor and executrix and trustees of the estate of E. M. Jones, deceased, and that no appeal or supersedeas bond was filed by either Florence Jones or J. M. Jones, as individuals, and therefore no appeal was perfected by them

in their individual capacity, and the judgment of the trial court as to them as individuals should in all things be affirmed.

The appellants have filed a motion to be allowed to file an amended and corrected supersedeas bond, which they tender with their motion, perfecting their appeal from the judgment obtained against them in their individual capacity and as executor and executrix and trustees of the estate of E. M. Jones, deceased.

The appellants show by affidavit that appellee's attorney prepared the judgment to be entered in his behalf and presented appellants' attorneys with a carbon copy thereof. That in such carbon copy no judgment against the defendants in their individual capacity was taken. That, relying on the correctness of this carbon copy, appellants prepared and filed their supersedeas bond, perfecting their appeal for Florence Jones and J. M. Jones as executrix and executor and trustees of the estate of E. M. Jones, deceased. That thereafter the attorneys for appellee changed the judgment to be entered so as to constitute a judgment against the defendants in their individual capacity in addition to the judgment against them in their representative capacities. That appellants' attorneys were not notified of the change, were not furnished with a carbon copy of the judgment as changed, and learned of such change just prior to their application to be allowed to file an amended supersedeas bond, from appellee's attorneys, who requested permission to inspect the carbon copy of the judgment theretofore furnished, and explained at this conference for the first time that the judgment had been changed and made to read so as to constitute a judgment against the defendants in their individual capacity as well as in their representative capacities. Attached to this affidavit is a carbon copy of the judgment as originally prepared by appellee's attorneys and presented to appellants' attorneys.

Appellee does not controvert the facts as stated in appellants' verified motion to be allowed to file an amended supersedeas bond, but takes the position that, inasmuch as under the law appellants were not required to file a supersedeas bond as executor and executrix, the filing of such supersedeas bond did not perfect appellants' appeal to this court, and therefore no appeal was perfected by the filing of such bond, and, in law, there is no bond to be amended.

The appellants were required, in order to perfect their appeal as trustees, to give a supersedeas bond as trustees; hence the court acquired jurisdiction of the appeal. 3 Tex. Jur. 344.

█ The transcript in this case was filed in this court on the 5th day of March, 1931. The case was submitted on June 3, 1931, and on June 10th the judgment was reversed, and the cause remanded, and thereafter, on June 22d, appellee filed his motion for rehearing and for the first time attacks the sufficiency of appellants' supersedeas bond.

"No motion was made to dismiss for want of proper bond, nor was the jurisdiction of this court in any way questioned until this motion for rehearing was filed herein by appellees. The objection to the bond, if at all well taken, comes too late." Drake et al. v. Yawn et al. (Tex. Civ. App.) 248 S. W. 726, 730, and authorities cited.

"The appeal bond was made payable to Estelle's sons, but not to their guardian ad litem, and it is urged that the bond was therefore defective; that this court acquired no jurisdiction; and the appeal should be dismissed. The record was filed in this court March 21, 1930, and this alleged defect in the bond was first called to this court's attention in the brief of Estelle's sons filed October 8, 1930. The precise contention of appellant was overruled in the recent case of Roberts v. Stoneham (Tex. Civ. App.) 31 S.W.(2d) 856, 858, from which we quote:

"'Under R. S. art. 1840, defects both of substance and of form in an appeal bond may be cured by amendment. Such defects are not jurisdictional (Foster v. Bunting [Tex. Civ. App.] 19 S.W.(2d) 784), and are waived by failure to present objections to the bond by motion within thirty days after the transcript is filed. Court of Civil Appeals Rule 8; De Proy v. Progakis (Tex. Civ. App.) 259 S. W. 620.'" Hart et al. v. Estelle et al. (Tex. Civ. App.) 34 S.W.(2d) 665, 671.

Appellants' motion to be allowed to file an amended supersedeas bond is granted, and appellee's motion for rehearing is overruled.