## MILLER et al. v. FOARD COUNTY et al.

### No. 3876.

Court of Civil Appeals of Texas. Amarillo.
March 8, 1933.

Rehearing Denied April 12, 1933.

Bartlett, Thornton & Montgomery, of Dallas, for appellant American Surety Co.

M. M. Hankins, of Quanah, for appellants R. D. Fox, G. M. Thacker, N. J. Roberts, J. R. Beverley, and J. W. Bell.

Storey, Leak & Storey, of Vernon, for appellant Que R. Miller.

R. D. Oswalt, of Crowell, and Marshall & Perkins, of Quanah, for appellee Foard County.

JACKSON, Justice.

Foard county instituted this suit to recover $26,427.97 from Que R. Miller, tax collector, R. D. Fox, N. J. Roberts, G. M. Thacker, J. R. Beverley, and J. W. Bell, the individual sureties on Miller's official bond for his term as tax collector ending December 31, 1930, and the American Surety Company of New York, a corporation, the surety on his official bond for the period from January 1, 1931, to September 1st thereafter. $1,389.80 of said sum were alleged to be school taxes, the recovery of which was eliminated by the court.

The county alleged the election and qualification of Miller as tax collector for two terms, his duty to collect and receive all tax moneys due the county, and all registration fees for motor vehicles licensed in the county and pay such collections to the proper officers thereof; that as tax collector he, with the individual sureties, executed his official bond for the first term ending December 31, 1930, and that he and the corporate surety executed his official bond for the second term, which was terminated by the resignation of Miller September 1, 1931.

The county set up the terms, conditions, and amount of each bond, the approval thereof by the commissioners' court, and attached copies of said bonds to its petition as a part thereof.

The county alleged that during the period from August 1, 1930, to September 1, 1931, Miller collected approximately $51,343.86, the exact amount of which it could not state, but that during said period he collected, after deducting the legal commissions claimed, the sum of $25,038.17 taxes, interest, penalties, and registration fees which he failed to pay to the county or its proper officers; that $220.50 thereof were special road taxes, $8,476.33 were registration fees for motor vehicles or license taxes, and $16,341.34 of said sum constituted occupation, poll, and county ad valorem taxes; that Miller was indebted to the county in the sum of $25,038.17, in which sum he had defaulted and for which he and his sureties were liable; that the whole of said sum so collected and unaccounted for, except approximately $1,274.35, was collected as taxes assessed and upon the tax rolls of the county for the year 1930; that the county could not state on what date the defalcation occurred, or which set of sureties was liable therefor, but that all sums for which the tax collector had failed to account were covered by one or the other of his official bonds, for which reason both sets of sureties were made parties defendant.

The county sought judgment against Miller for the amount of taxes collected by him and not paid to the county, with legal interest, and against the individual sureties and the corporate surety for such portion of said shortage as the evidence showed each set of sureties to be respectively liable.

Que R. Miller answered by general demurrer, general denial, and pleaded that neither he nor his sureties upon either of said bonds were responsible to the county for any unpaid sum collected as motor vehicle registration fees, because he as tax collector received approximately $15,000 as registration fees for motor vehicles, the owners of which were nonresidents of Foard county; that he issued tax receipts aggregating the sum of $1,000, for which he accepted checks, and they were never paid, and for the amount of such registration fees and such checks neither he nor his bondsmen were liable.

The individual sureties pleaded general demurrer, special exceptions, and asserted that Foard county had and maintained a county depository for the period covered by their bond; and all taxes collected by Miller were deposited therein; that he issued tax receipts for checks not paid and receipts in payment of his personal obligations and license fees to nonresident motor vehicle owners, for all of which reasons the individual sureties owed no obligation to the county.

The corporate surety pleaded general demurrer, special exceptions, general denial, and specially that a part of the registration fees for motor vehicles were received from nonresidents of Foard county, and did not involve the official duty of the tax collector, and were therefore illegally collected, and that all moneys collected by Miller during the period covered by the corporate surety's official bond were deposited in the county depository, which discharged Miller and the corporate surety.

The record shows that the parties entered into the following agreement:

"It is agreed that reports filed by the tax collector for the months of January, 1931, to August, 1931, inclusive, show the total amount of automobile registration fees collected by him during that period, and the net amount thereof due the County, after deducting his fees for collecting same, are as follows: Gross collections, $18,504.98; Net amount due County, $17,848.10.

"It is further agreed that the total amounts paid by the Collector to the County Treasurer, (and which was by her deposited to the credit of the Road and Bridge Fund) upon the above mentioned reports, was the sum of $9,371.77; and the same was paid to the Treasurer, in the several amounts, and upon the dates testified by her.

"It is further agreed that the report for the first part of January, 1931, report and include

Commercial Vehicle Receipts numbered one to twelve, inclusive; that each of said receipts bear date in the month of December, 1930; that the total gross amount collected by said twelve receipts is the sum of $774.70; and that said sum of $774.70, was collected by the Collector during the month of December, 1930, and prior to January 1, 1931.

"But nothing in this agreement shall be construed as an agreement that said reports were admissible in evidence, or that the introduction thereof proves or tends to prove the material allegations or any of them, in plaintiff's second amended original petition."

In response to special issues submitted by the court, the jury found, in effect, that Que R. Miller failed to account for and pay over to Foard county, after deducting the legal commissions, county ad valorem, special road, poll, and occupation taxes amounting to $3,336.96, collected from August 1, 1930, to December 31, 1930; that he failed to account for and pay over to Foard county, after deducting the legal commissions claimed, county ad valorem, special road, poll, and occupation taxes amounting to $13,108.03, collected from January 1, 1931, to September 1, 1931.

On this agreement and the findings of the jury the court rendered judgment against Que R. Miller and the individual sureties for the sum of $3,336.96, with interest, and for the sum of $768.70 as registration fees, aggregating a total of $4,105.66; and against Que R. Miller and the corporate surety for the sum of $13,108.03 with interest, and $7,707.63 as registration fees, or an aggregate of $20,815.66.

The individual sureties, having failed to file bond, did not perfect an appeal. Que R. Miller perfected his appeal, but filed no brief.

■ The corporate surety, appellant, presents as error the failure of the court to instruct the jury that any tax money received and deposited by the collector in the county depository would constitute an accounting and discharge appellant from liability therefor, as the evidence discloses that part of the money sued for was so deposited.

This contention is decided adversely to appellant by Chief Justice Hall in Miller et al. v. State (Tex. Civ. App.) 53 S.W.(2d) 792, writ refused.

The appellant challenges the sufficiency of the testimony to support the finding of the jury that Miller from January 1, 1931, to September 1st thereafter, when he resigned, collected and failed to account for $13,108.03, because the evidence shows that a part of said sum was collected in December, 1930, and under the law appellant was not liable for such part.

■ The official bond upon which the county seeks to hold the appellant became effective January 1, 1931, and any taxes collected and misappropriated prior to that date would not be chargeable against this appellant. Coe et al. v. Nash County Judge, 91 Tex. 113, 41 S. W. 473; Newcomer et al. v. State of Texas, 77 Tex. 286, 13 S. W. 1040; State of Texas v. Middleton's Sureties, 57 Tex. 185.

Under article 7261, R. C. S., it was the duty of Que R. Miller, at the end of each month, to make a report to the commissioners' court of all collections made for the county in the manner and form prescribed for reporting taxes collected for the state under article 7260. These articles require that he show each and every item of ad valorem, poll, and occupation taxes collected by him during the month; that he present this report, together with the tax receipt stubs, to the county clerk, whose duty it is to compare such report with said stubs as to names, dates, and amounts and, if correct, certify thereto.

■ The record discloses that Que R. Miller, as tax collector by his deputy Marion Crowell, made the report as required by law for the taxes collected during the month of January, 1931; that the report was sworn to by the deputy and by Que R. Miller, and properly certified by A. G. Magee as county clerk. The report shows that the taxes which appellant contends were collected and paid in December, 1930, were not collected and paid until the month of January, 1931.

Testimony was introduced tending to show that certain items on the report were collected and paid in December, but such evidence was not so conclusive that it would authorize this court to disregard the finding of the jury to the effect that such items were collected and paid in January.

■ "In determining whether a peremptory instruction should be given or whether there is testimony to support the findings of a jury in this case, only the testimony supporting plaintiff's claim may be considered, and we must accept as true the evidence supporting the findings of the jury on the issues presented. Roddy et al. v. Citizens' State Bank of Copeville (Tex. Civ. App.) 11 S.W.(2d) 652; M., K. & T. Ry. Co. of Texas v. Cunningham, 118 Tex. 607, 23 S.W.(2d) 343; Willis & Conner v. Turner (Tex. Civ. App.) 25 S.W.(2d) 642; Henry v. Publix Theatres Corporation (Tex. Civ. App.) 25 S.W.(2d) 695; Frazier v. Hanlon Gasoline Co. (Tex. Civ. App.) 29 S.W. (2d) 461; Henderson v. Burkholder (Tex. Civ. App.) 29 S.W.(2d) 937." Jones v. Jones (Tex. Civ. App.) 41 S.W.(2d) 496, 497.

The appellant contends by proper assignments that the law requires the owners of motor vehicles to apply to, register with, and pay license fees to the tax collector of the county in which such owner resides at the time of registration, and, as the evidence discloses without dispute that Que R. Miller, from January 1, 1931, to September 1st thereafter, collected $7,097.74 from owners who were nonresidents of Foard county, it was

error to render judgment against it for said sum because such collections were no part of Miller's official duty, the faithful performance of which the appellant guaranteed by its bond.

The record discloses that Que R. Miller collected, according to his reports, from January 1 to September 1, 1931, the net amount of $17,848.10 as motor vehicle registration fees, of which sum $740.70 was collected during December, 1930; that he accounted for the sum of $9,371.77, leaving a balance collected after January 1st and unaccounted for of $7,701.63. The testimony discloses without contradiction that $603.89 of this amount were registration fees collected from residents of Foard county; that $1,876.62 thereof were collected as registration fees from nonresidents of the state; that $5,221.12 thereof were registration fees collected from owners of motor vehicles who resided in Texas, but did not live in Foard county; that Miller went out of Foard county and solicited the payment of much of such last two items; that the members of the commissioners' court knew and acquiesced in the collection of registration fees from owners who did not reside in Foard county.

Article 827b, § 2, Vernon's Ann. P. C., provides that a nonresident of the state owning a motor vehicle that he desires registered may apply "through a County Tax Collector for the registration thereof," and obviously permits a tax collector of any county to whom application is made to issue the license provided by law, collect the fee therefor, and pay the same to the county.

Article 6675a—2, Vernon's Ann. Civ. St., provides, in part: "Every owner of a motor vehicle, trailer or semi-trailer used or to be used upon the public highways of this State * * * shall apply each year to the State Highway Department through the County Tax Collector of the County in which he resides, for the registration of each such vehicle owned or controlled by him * * * for the ensuing or current calendar year or unexpired portion thereof."

Article 6686, R. C. S., subd. d, reads as follows: "All registration fees shall be paid in the county in which the owner lives at the time of registration of said motor vehicle."

Article 6675, R. C. S., repealed before the transaction here involved occurred, permitted the owner of a motor vehicle to pay registration fees at "the office of the county tax collector of the county in which he resides or in which the vehicle to be registered is being operated."

The omission of the language "Or in which the vehicle to be registered is being operated" from article 6675a—2, the provision of subdivision d of article 6686 requiring that: "registration fees shall be paid in the county in which the owner lives," together with the provision of article 6675a—10 authorizing each county to retain all registration fees collected until the amount for the current year shall have reached the sum of $50,000, said sum to be deposited to the credit of its road and bridge fund, clearly manifests the intention of the Legislature to direct and require such registration fees to be collected by the tax collector of the county in which the owner of the vehicle lives.

If these statutes fail to accomplish such purpose, it follows that the funds of one county may be received and appropriated by another county.

This brings us to a consideration of whether appellant as bondsman is liable for the registration fees collected by Que R. Miller, tax collector, from owners of motor vehicles who reside in Texas but did not live in Foard county.

The bond executed by appellant is in conformity with the statute, and provides that Miller shall faithfully perform all the duties of his office as collector of taxes for and during the full term for which he was elected.

It is settled in this state that a surety for compensation has the same protection in law as a surety who executes a bond without compensation. Lonergan v. San Antonio Trust Co., 101 Tex. 63, 104 S. W. 1061, 106 S. W. 876, 22 L. R. A. (N. S.) 364, 130 Am. St. Rep. 803; Hess & Skinner Engineering Co. et al. v. Turney et al., 110 Tex. 148, 216 S. W. 621, but the surety on an official bond does not occupy altogether the same position as a surety of a private contract, Brown v. Sneed, 77 Tex. 471, 14 S. W. 248, 252.

The Texas authorities recognize the rule which distinguishes the liability of a surety for the acts of an officer for which they are liable and for acts for which they are not liable.

"The former are termed acts done 'virtute officii,' and the latter 'colore officii.' The distinction is this: Acts done 'virtute officii' are when they are within the authority of the officer, but when doing it he exercises that authority improperly, or abuses the confidence which the law reposes in him; whilst acts done 'colore officii' are where they are of such nature the office gives him no authority to do them." Gold v. Campbell, 54 Tex. Civ. App. 269, 117 S. W. 463, 468.

In Jeff Davis County v. Davis (Tex. Civ. App.) 192 S. W. 291, writ refused, the same rule is announced. See, also, Fidelity & Deposit Co. v. Smith, 35 Ga. App. 744, 134 S. E. 801.

The Supreme Court, in Wood v. Stirman, 37 Tex. 584, says that: "If the appellee collected taxes without authority of law, he alone is responsible for that illegal act, and neither his securities nor the county are responsible to appellants for the money so collected,

notwithstanding he may have paid the same into the county treasury, to be disbursed as other funds of the county."

In Heidenheimer Bros. v. Brent, 59 Tex. 533, it is said: "The mere fact that the sheriff had the money in question in his possession is not enough to bind his sureties. It must also appear that it came into the hands of the sheriff by virtue of some process or lawful authority, and that he then failed to pay it over."

Again, in Brown v. Sneed, supra, the Supreme Court holds: "The sureties on the bond of a clerk of a court were held not to be liable for money paid into his hands by executors, etc., because it was not in the line of his official duties as clerk of the court to receive such money; and they were liable only for the performance of his official duties."

In Henderson County v. Richardson et al., 15 Tex. Civ. App. 699, 40 S. W. 38, 39, the court announces: "We think it clear that the sureties of the said Dickerson were only bound for moneys that he might have received in his official capacity; and as the moneys he received from the sale of school lands were not received by him in his official capacity as county judge, nor in the official discharge of his duties as such, the appellees are not liable therefor."

In American Surety Co. of New York et al. v. Hidalgo County et al. (Tex. Civ. App.) 283 S. W. 267, 269, the court states the rule as follows: "The liabilities of sureties are strictis-simi juris, and cannot be extended beyond the terms of their contracts. The mere fact that the treasurer had the money of the drainage district and failed to account for it did not render his sureties liable. It was absolutely necessary to show that the money came into his hands as county treasurer under the terms of his bond as such treasurer."

■ We are not unmindful of the rule which holds sureties on official bonds liable for illegal taxes and illegal fees voluntarily paid, but the registration fees in controversy were legal fees payable to the proper counties for their road and bridge funds, and their collection by Que R. Miller was a diversion thereof, and his acts in so doing were not authorized or sanctioned by law. They were not illegal fees voluntarily paid, but were legal fees unlawfully collected under the color of office and not in the performance of official duty. If this conclusion is correct, the appellant in this case was not responsible for the $5,221.12 registration fees collected by Que R. Miller from owners of motor vehicles residing in Texas but not living in Foard county.

■ The assignments of error attacking the action of the trial court in overruling appellant's demurrers to the county's petition are untenable. Article 1989, R. C. S.; Harris County v. Charlton, 112 Tex. 19, 243 S. W. 460, 245 S. W. 644.

■ The contention of appellant that the court committed reversible error in failing to define "legal commissions" is overruled.

The assignment of error on which this proposition is based is, in part, as follows: "The amount of legal commissions was shown by uncontroverted evidence and was ascertainable by mathematical calculation." The amount of commissions charged did not affect the judgment against the appellant.

The judgment of the trial court awarding plaintiff judgment against the corporate surety for registration fees for the sum of $7,707.63 is reformed so as to allow the county to recover from this appellant as registration fees only $2,480.51; and, as so reformed, the judgment is affirmed.

MARTIN, J., not sitting.