GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY V. SAM G. ECKLES.

Decided December 12, 1901.

**1.—Evidence—General Reputation.**

Where a witness was asked if he knew the reputation borne by R. at a stated time for competency or incompetency as a locomotive fireman among railroad men in S. and other places, and he answered that he did only from having heard it discussed on a number of occasions, an objection to the evidence as not going to general reputation was untenable.

**2.—Same—Objection Waived.**

A party loses his right to complain of evidence as being merely the opinion of the witness where he suffers testimony of the same character from other witnesses to go to the jury unchallenged.

**3.—Same—Medical Bills—Allegation Limiting Recovery.**

Where plaintiff's petition alleges that because of his injuries he paid for medicines a stated sum, he may testify that he paid a larger given sum for medical bills, but the jury should be required to find only for some amount within the sum alleged in the petition.

**4.—Same—Deposition—Harmless Error.**

It was harmless error to admit the deposition of a witness given on a former trial where it was not read or submitted to the jury, and did not differ materially from his testimony given on the stand.

**5.—Amendment—New Cause of Action—Limitations.**

Where plaintiff, a railroad switchman, alleged that his injuries were occasioned through the negligence of R., an incompetent employe, and that he had complained of R. to one O., a vice-principal of defendant company, his second amended petition alleging that the complaint was made to O. and also to M., yard foreman and vice-principal, this did not set up a new cause of action within the rule as to limitations.

**6.—Same—Practice on Appeal—Presumption from Record.**

Where only the original petition, and second amended petition containing the new allegation, are before the appellate court, and there is nothing in the record to show the date and contents of the first amended petition, the presumption obtains in favor of the ruling of the trial court that the first amendment was filed in time and also contained the new allegation.

**7.—Estoppel by Statements in Application for Writ of Error.**

Statements by plaintiff in an application to the Supreme Court for writ of error on the ground that a judgment of reversal practically settled the case, as he could not procure further evidence, can not be made to operate as an estoppel against his afterwards pleading and proving additional and material facts in the case on another trial.

Neil, Associate Justice, dissenting.

### ON REHEARING.

**8.—Jury—Crediting Witness in Part Only.**

It is within the province of the jury to give credence to a part only of the testimony of a witness, and to reject the other part.

**9.—Railway Company—Vice-Principal.**

. Where a yardmaster has power to discharge any and all employes within the yards, he is, so far as concerns the proper discharge of such duties, a vice-principal of the railroad company.

Appeal from Bexar.   Tried below before Hon. Robert B. Green.

*Upson, Newton & Ward,* for appellant.

*Camp & Camp, Floyd McGown, Davis & Williams,* and *William Aubrey,* for appellee.

FLY, ASSOCIATE JUSTICE.—This is a suit for damages brought by appellee, and this is the third time it has been before this court.  7 Texas Civ. App., 429; 26 S. W. Rep., 1117, and 54 S. W. Rep., 651. The last trial resulted in a verdict in favor of appellee for $30,000, of which $10,000 was voluntarily remitted, and judgment was rendered for the sum of $20,000.

There are facts to sustain a conclusion that appellee was seriously and permanently injured through the negligence of appellant.   Appellee, through the negligence of Ross, who was an incompetent servant, and whose incompetency was known to appellant, was caught between two cars, and his head mashed so that blood spurted from his ears, and one of his eyes was forced from its socket and hung upon his cheek; that unconsciousness resulted for two or three weeks; that appellee was in bed for many months; that his skull was fractured and portions of it taken out, and appellee had been changed from a robust, intellectual man into a man weak in mind and body, who for ten years has endured much suffering and is permanently disabled.   His hearing and seeing have been rendered defective by the injury, and portions of the brain are so exposed that a slight blow might produce death or insanity.   Appellee was earning $2.75 a day when injured, but since has been incapacitated for active labor, mental or physical.

The first assignment of error complains of the following question and answer asked C. L. Harris, and answered by him: "Do you know the reputation borne by A. A. Ross for competency or incompetency on or before the 30th day of November, 1890, as a locomotive fireman among

railroad men in San Antonio and other places, and if yes, state what was his reputation on said date?" "I know the reputation borne by A. A. Ross on and before the 30th day of November, 1890, as a locomotive fireman among railroad men in San Antonio and other places, only from having heard it discussed on a number of occasions." The objections to this question and answer were that they did not relate to the general reputation of Ross, but pertained alone to reputation, and that the witness had not qualified himself to testify as to general reputation.

The reputation inquired about was that among railroad men not only in San Antonio but other places, the only class of men upon whose opinion the reputation of a locomotive fireman could properly be based, and a reputation among that class of men would be a general reputation. The witness swore to a knowledge of that reputation, and stated further that he had obtained the knowledge of the reputation by hearing them discuss it on a number of occasions. Suppose the question had been as to general reputation, that reputation must have been made among railroad men, for they were his associates, and no one else would be in a position to know what constituted a competent or incompetent fireman; and it would seem clear that when the question was as to the reputation among railroad men, and the answer given as to the reputation among railroad men, it necessarily covered all the reputation the fireman had.

The second assignment of error refers to a bill of exceptions as its basis, but an inspection of the bill of exceptions shows that the questions and answers do not refer to the reputation of Ross as stated in the assignment of error, but the questions are addressed to the knowledge that the witness had of the competency or incompetency of Ross as a fireman. The objection to that evidence is not tenable. The witness had already testified without objection to the same facts objected to, and if this had not waived any right to object, the witness had qualified himself as an expert, fully competent to give an opinion on the fitness of the fireman to perform his duties. Terrell v. Russell, 16 Texas Civ. App., 573.

The witness Doane qualified himself to testify as to the competency of the fireman, and the testimony was admissible. Testimony of the same character from other witnesses went unchallenged to the jury, although the objection that the evidence was merely the opinions of witnesses was as applicable thereto as to that of Doane, and appellant has thereby lost the right to complain.. It was alleged in the petition that appellee had been compelled. to pay $100 to physicians, $250 for medicines, and $150 for nurses' hire, but appellee swore that he had paid on medical bills about $750, and this was objected to because there was no allegation to support it, and because the amount was larger than named in the petition. There was an allegation that medical bills were incurred by reason of the injuries inflicted by appellant, and it can not be reasonably contended that a party is prevented by an allegation of a certain amount from swearing the truth as to expenditures. The jury in such a case could be required to find only for some amount within the maximum alleged. In the charge, amounts paid for medicines, doctors,

or nurses were not included in the damages to be found by the jury. In view of a remittitur of $10,000, it would seem that any excess of verdict for medicines or medical bills was cured.

The testimony of M. J. Mulligan at a former trial was admitted in evidence over the protest of appellant, the objection being that it was irrelevant and immaterial. It is stated in a qualification of the bill of exceptions to the admissibility of the testimony that while the evidence was admitted it was not read to court or jury, and there is nothing in the record indicating that the testimony, which was in writing, was carried by the jury when they retired to consider their verdict. It can not be inferred that the mere ruling of the judge that the testimony was admissible could have injured appellant, when the jury was not made acquainted with the facts permitted to be introduced. The testimony, however, is included in the statement of facts, and an examination shows that the testimony does not differ in any material matter from the testimony of the witness on the trial, and while it should have been excluded, no injury appears to have resulted from its admission, and its admission would not be ground for reversal. Railway v. Hume, 87 Texas, 211.

The seventh assignment of error complains of the refusal of the court to allow Dr. Graves to testify why appellant would not take appellee back into its service. The bill of exceptions upon which the assignment is based shows that Dr. Graves did testify as to why the railroad company would not take appellee into its service, and the only part of the evidence that appears by the bill of exceptions to have been excluded was what the railroad officials told the witness. From the statement of facts it appears that even that part of the testimony was not excluded, and the statement of facts was agreed to by appellant.

The eighth assignment of error can not be sustained, for the reason that both the bill of exceptions and statement of facts show that the evidence desired to be elicited by a leading question was given by the witness in answer to legitimate questions.

It was not error to refuse the special charge embodied in the ninth assignment of error. There was testimony that strongly tended to prove that Mulligan was a vice-principal of appellee, and to have instructed the jury that he was not, would have been a gross usurpation of the prerogatives of the jury.

The tenth assignment of error is to the effect that the court erred in refusing to give a certain charge requested by appellant, as follows: "Defendant asks the court to charge the jury that before plaintiff can recover in this case he must prove by a preponderance of evidence that he complained to M. J. Mulligan of the incompetency of the fireman, A. A. Ross; that said Mulligan promised to remove said fireman; that said fireman was incompetent; and that said plaintiff did not know that said fireman had not been removed from the engine when he was hurt; that said Mulligan had the power and authority to hire and discharge said fireman, and that plaintiff was injured by reason of the incompetency of said fireman." The court had already charged the jury correctly on

every point presented by the requested charge, and it was not error to refuse to give it.

It was not error to refuse the charge contained in the eleventh assignment of error. In the original petition it had been alleged that appellee complained of the fireman to one O'Toole, and in the second amended petition it was alleged that the complaint was not only made to O'Toole but to Mulligan. The addition of the allegation as to Mulligan did not set up a new cause of action. The damages are sought for the same acts of negligence as in the original petition, and that pleading had the effect of arresting the statute. Southern Pacific Co. v. Wellington, 57 S. W. Rep., 856, and authorities therein cited; Oil Co. v. Stewart, 17 Texas Civ. App., 59. None of the Texas authorities cited by appellant sustain its contention. In the case of Bigham v. Talbot, 63 Texas, 271, cited by appellant, it is said, in sustaining the plea of limitation to the cause of action: "If, however, there had been any allegations in the first amended petition in any way retaining, even as part of the cause of action therein asserted, that which was asserted by the original petition, and afterwards reasserted by the second amended petition, that would have been sufficient to prevent the running of the statute after the original petition was filed." Can it be consistently contended that no part of the original cause of action is contained in the second amended petition? It is not so contended, but it is contended that the addition of the pleadings, as to Mulligan changes the cause of action. The contention is without merit. It may be noted in this connection that only the original petition and second amended petition are before this court, and there is nothing in the record to show the date of the first amended petition, and the presumption would prevail that it was filed in time and contained the proper averments to meet the objections of appellant and sustain the ruling of the court.

The court properly refused to instruct the jury that appellee was estopped from alleging and proving that he had made complaint of the incompetency of Ross to Mulligan by reason of a motion for rehearing filed in this court on a former appeal and an application for writ of error to the Supreme Court. The case of Portis v. Hill, 14 Texas, 74, and 30 Texas, 563, is cited as sustaining the novel proposition contained in the requested charge, but there is nothing in those decisions to support the contention. The admissions in the motion for rehearing and in the application for writ of error would be evidence that might tend to prove the falsity of the testimony of appellee as to his complaint to Mulligan, but does not contain anything that would constitute an estoppel.

The thirteenth assignment of error contains statements as to arguments made by counsel and other matters that are not supported by the record, and which can not be considered by this court. The conclusions of fact dispose of the remaining assignments of error.

The verdict was a very large one, even after a remittitur of $10,000, but the evidence introduced by appellee established that he has been transformed, by the injuries inflicted on him, from a robust young man

into a pitiable. wreck in mind and body; that for ten years he has suf-
fered intensely, and we do not feel authorized to hold the verdict ex-
cessive, as reduced by the remittitur.   It is not now an open question as
to the propriety of the remittitur in the District Court.   Railway v.
Syfan, 91 Texas, 562; Railway v. Johnson, 24 Texas Civ. App., 181; 58
S. W. Rep., 622.

The judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

JAMES, Chief Justice.—The majority of the members of this court
see no ground for reversing the judgment of the District Court con-
sistent with the right of the jury to try disputed questions of fact.
The dissenting opinion filed in this case would hold that the jury were
not warranted in considering, in connection with plaintiff's testimony
(and the testimony of others) that the train came to a full stop, the
testimony of the engineer that the fireman was taking the signals from
plaintiff and repeating them to him (the engineer) at the time of the
accident, to come back slowly.   True, the engineer, Walton, testified
that the train had not stopped.   We can not understand why the jury,
in weighing the testimony of Walton in connection with the testimony
of others, could not give credence to part of his testimony and reject the
rest.   We have no right to say as a matter of law that they should have
accepted all his testimony or none.   There was evidence to the effect
that the engineer had stopped the train on a signal of plaintiff to the
fireman, and that the engineer then moved the train and injured plain-
tiff while acting in accord with signals conveyed to him by the fireman.
This would indicate that the movement which injured plaintiff resulted
from the fireman's acts.   He had seen plaintiff going in between the
cars, yet he gave the engineer the back signal, and only notified him to
stop when he saw plaintiff was hurt.   He testified, as did Walton, that
the train had not stopped, but three, and probably four, witnesses testi-
fied positively that it had stopped.   If it had stopped as plaintiff testi-
fied, on a stop signal given by him (and in this he is corroborated by the
testimony of several witnesses that it did in fact stop), and the jury so
believed, they could not very well escape finding that Ross was negli-
gent, because both he and Walton testify that such signal was not the
one repeated to the latter.   Where three or four persons testify that the
train did come to a stop when plaintiff went in between the coaches, it
can not be said that a finding of such fact is clearly against the weight
of the evidence.   Nor can the jury be justly charged with disregarding
the evidence in finding such fact, and in giving it effect in connection
with other testimony which they believe to be true.

Another ground of the dissent is that under the testimony the fact
clearly appeared that plaintiff saw and must have recognized that the
fireman he was giving signals to was Ross, of whose incompetency he had

(as he testified) recently complained. Plaintiff denied having been on the engine, or that he knew that Ross was fireman on the engine that morning, and he testified that he had been giving signals from the engineer's side, and that just before he went between the coaches, and when the train was nearing the coaches that were to be coupled on, he went to the fireman's side and gave first a slow-up signal and then a stop signal, and that he did not know Ross was the fireman until after he was hurt. It is true that he might have recognized Ross, who testified he was looking out at the window from the fireman's side, taking signals from plaintiff. But it is not certain that plaintiff was looking, or looking intently, in the direction of the fireman; nor, if he had, that he must have identified him; nor do we find that appellant claims that it certainly appears that plaintiff must have identified Ross on the engine. If it was true that the yardmaster had promised plaintiff to remove Ross, he might naturally have relied on it having. been done.

There was testimony from which it could have been found that Ross was incompetent; that plaintiff ascertained his incompetency while working with him; that he reported this fact to Mulligan, the yardmaster, complaining of Ross being retained for that reason, and that Mulligan promised to remove Ross as fireman. If Mulligan was appellant's vice-principal, with power to remove this fireman for incompetency, there can be no doubt that it was competent for the jury to find in this case that appellant was informed of the incompetency of Ross and was negligent in having him there that morning as fireman. This leads us to a question of law whether or not a servant to whom appellant has committed the power to remove employes for incompetency is its vice-principal within the scope of such power. The test for determining whether employes were fellow servants or not at the time of this occurrence was. the power to employ and discharge. The evidence here is wanting in respect to showing that Mulligan, the yardmaster, had power to employ men, but it is ample that he in fact had and exercised the power to discharge any employe whom he discovered to be incompetent in and about the yards. His acts in this regard were effective. It was not indispensable that he should also have had power to employ; otherwise it would have been possible for appellant to have given one person the power to employ and another the power to discharge, and neither be a vice-principal. It is the duty of a railway company to exercise ordinary care with a view to having only competent men in its service, and this is a duty the performance of which it owes to its servants generally. If it committed to Mulligan, either expressly or in practice, the power to discharge for incompetency employes within the yards of which he was master, then he was its vice-principal so far as the performance of said duty was concerned. We believe the evidence was suffiicent to authorize finding that he was a representative of appellant in regard to its said duty.

The evidence upon some of the essential facts may not be satisfactory to us, and we would probably have reached different conclusions from it

if it devolved on us to pass upon its weight and credibility. This is not our province, and we believe it would be going too far to say that the verdict is clearly against the weight of evidence.

In the opinion already delivered we expressed the belief that, even as reduced by remittitur in the District Court, the verdict is a very large one. It was chiefly on account of plaintiff's testimony that we then concluded to allow it to stand. After reconsidering all the evidence bearing on his injuries, and the permanency thereof, we conclude that the verdict should not exceed $15,000, and if plaintiff will within five days remit enough to reduce it to that sum, we will affirm such judgment. Otherwise the judgment will be reversed and the cause remanded.

The motion does not convince us of any errors that require a reversal of the judgment.

NEILL, Associate Justice (dissenting).—To sustain the judgment in this case it must reasonably appear from the evidence (1) that appellee's fireman, Ross, was incompetent to discharge the duties of employment in receiving and communicating signals to the engineer for the movement of his engine; (2) that appellant at the time of the accident knew, or by the exercise of reasonable diligence could have known, of the fireman's incompetency in that regard; (3) that appellee did not, when performing the service in which he was injured, know that Ross was incompetent, or, if he did know it, he did not know Ross was the man to and from whom he was communicating and receiving signals for the management or movement of the engine; (4) that Ross, by reason of his incompetency, when the engine was at a standstill, without being signaled so to do by appellee, gave a signal to the engineer to move his engine, and that its movement in obedience to such signal was the cause of appellee's injury.

I believe the evidence is sufficient to warrant the jury in finding that Ross was incompetent to discharge the duties of his employment. But in my opinion it is wholly insufficient to establish the other three issues essential to appellee's recovery. If I am mistaken in this, I can not be in the conclusion, formed from reading and carefully considering all the evidence, that the overwhelming weight of the testimony upon these issues is against the appellee.

There is no room from the evidence to question the fact that before employing Ross as a fireman, from the exercise of ordinary care to fit him for his duties and to determine his qualifications, appellant really believed that he was reasonably competent to discharge the duties of his employment. If the appellant knew, or, by the exercise of reasonable diligence could have known, of his incompetency, it must have obtained such knowledge, or be imputed with it, from a failure to exercise ordinary diligence to discover his incompetency after Ross was employed and engaged in its service. Appellant, having at the time of the employment exercised ordinary care in determining the competency of its

servant, must, in order to render it liable for the consequences of his incompetency, have been either informed of such acts or omissions on the part of Ross as would, under like circumstances, indicate to an ordinarily prudent person that he was incompetent to discharge his duties; or have failed to exercise such supervision over him in the performance of his labor as would, if exercised, be reasonably sufficient to show his incompetency. The contention of the appellee is that he, having himself learned of Ross' incompetency to correctly take and communicate signals on the evening before the accident, made complaint to the fireman's vice-principal, and informed him of the fact that Ross was incapable of performing his duties as fireman. It is through this communication alone that he seeks to charge appellant with knowledge of the incompetency of Ross. If the fact of incompetency were in the manner claimed made known to one of appellant's servants who had authority from his master to employ or discharge a fireman, knowledge thus obtained would be the knowledge of the company. If, then, with such knowledge, appellant, through such vice-principal, promised appellee to discharge Ross and have a competent fireman in his place, and appellee continued in its service as a switchman, relying on such promise, and while in the discharge of his duty, without knowing that Ross was the fireman on the engine, was injured by reason of a wrong signal given by Ross to the engineer, the company would be liable for the injury thus inflicted.

In his original petition the appellee alleged that one Fuller, nicknamed O'Toole, was the vice-principal to whom he complained of Ross' incompetency and who promised to discharge him. Having obtained a judgment on the petition containing such allegation, which, on appeal to this court, was reversed because the evidence was insufficient to show that Fuller had authority to employ or discharge a fireman, the appellee applied to the Supreme Court for a writ of error upon the ground that the decision practically settled the case, and he could obtain no other or further evidence on another trial. The application being denied, he then amended his pleadings by alleging that one M. J. Mulligan was Ross' vice-principal, having authority to employ and discharge its firemen, and that he complained to Mulligan of Ross' incompetency, and that he promised to remove him. If, then, it should be conceded that the complaint was made to Mulligan (which I do not believe the evidence is sufficient to show), to charge appellant with knowledge of Ross' incompetency it must appear from the evidence that Mulligan was intrusted with the performance of the duty of hiring and discharging appellant's fireman of switch engines. For if he was intrusted with such duty, he could, upon determining the truth of the complaint, have performed the company's duty of removing Ross and employing a competent fireman in his place.

Mulligan was, at the time of the accident, appellant's yardmaster at San Antonio. The testimony of himself and of those who from their relation to the company were in the best attitude to know, to my mind

shows beyond a reasonable doubt that Mulligan was vested with no authority by the company to either employ or discharge its firemen. He had authority, subject to the approval of the division superintendent, to employ and discharge switchmen. But at the time the complaint is alleged to have been made to Mulligan of the incompetency of Ross, Harry Nangle, then in charge of appellant's roundhouse, and J. J. Ryan, general master mechanic, were the only persons authorized to employ and discharge firemen. Taking the most favorable view to the appellee of the evidence on this point, it goes no further than to show that when he reported any of appellant's employes for negligence, inefficiency, incompetency, or disobedience to orders, *when at work in the yard* of which he was foreman, and recommended their removal, they were relieved or discharged from further work *there* by the officers of the company having authority to discharge them. This falls far short of proof that he had the authority from the company to employ or discharge a fireman.

In the face of his allegations, it can not be contended by appellee that he was ignorant of the fact that Ross was incompetent to discharge the duties of a fireman on a switch engine. If then he, after having complained of the fireman's incompetency, and, as he claims, having such promise from him to whom the complaint was made, knew on the morning of the accident that such unskillful fireman was on the engine, and that he, in the discharge of his duties as switchman, would have to give and receive signals from him, which, from his incompetency, Ross was unable to properly perform, by continuing with such knowledge in appellant's service the appellee, as incident to his employment, assumed the risk of all danger that might naturally and probably result from the incompetency of such fireman. I can not perceive, under the evidence in this case, how it is possible for the appellee not to have known, when he was performing the service in which he was injured, that the same fireman of whose incompetency he had complained was on the engine receiving from and communicating signals to him. If he knew Ross by sight, though he may not have known his name well enough to identify him in making the complaint, then he must have recognized him on the engine the next morning just prior to the accident when giving signals to and receiving them from him. Ross was necessarily in a position where he could be easily seen and recognized by the appellee, and there was nothing to prevent such recognition. Knowing that Ross was incompetent, and expecting him to be replaced by a more efficient servant, it is improbable that appellee when he resumed his duties on the morning he was hurt did not see and know who the fireman was upon whose skill and efficiency his own safety depended while discharging his duties as switchman. Ordinary care for his own safety dictated that he should exercise the opportunity of looking the fireman in the face and ascertain whether he was the one against whom he had made complaint, or some one else, before he commenced his day's labor. And for him to say that

he did not, is to say that he acted contrary to the dictates of human nature and reason.

Upon the fourth essential issue, the appellee's evidence is to the effect that while the engine was moving slowly in obdience to a slow signal given by him, he made a coupling to two cars, and then gave the man (Ross) on the fireman's side the stop signal; that the engine in obedience to the signal came to a stop; that he then went under the coaches to cut the airhose and stopcock; and while under there in the act of cutting the airhose, the engine was placed in motion, and he was caught between the platforms of the two cars and thereby injured. None of the testimony introduced by appellee tends to show that after the engine was stopped in obedience to his signal the fireman gave the engineer any other signal, or that any signal word or act of Ross caused the engineer to set the engine in motion while appellee was under the cars. If the evidence on this point had closed with appellee's testimony, I should say without hesitation that there is not a scintilla of evidence that tends in the least to prove this issue in appellee's favor. But appellant's witnesses give a different version of how the accident occurred. It appears from the following testimony of Mr. Walton, the engineer. He says: "At the time of the accident we were backing two sleeping cars on Davis 1—switch to couple on to the coaches standing on the switch. I backed at the rate of three or four miles an hour until I got about one car length of the coaches, when I slowed down to about one mile an hour to make the coupling. The fireman was taking the signals from the plaintiff and repeating them to me at the time of the acident to come back slowly. Fuller was on my side of the engine giving me a slow-back signal; we struck the car going very slowly, and immediately after I felt the jar of the cars in coupling; the fireman called me to stop, saying some man had his foot cut, and I immediately applied the airbrake, reversed the engine, and instantly brought the train to a stop. I looked from the fireman's side of the engine and saw plaintiff stagger out as though from between the coaches." It is only by excising from the testimony quoted the sentence, "the fireman was taking the signals from the plaintiff and repeating them to me at the time of the accident to come back slowly," and joining it to appellee's testimony, that a conclusion can be reached on this issue favorable to him. I do not think testimony should be juggled with in this way in order to reach a conclusion in favor of or against either party. There is no more reason for taking this excerpt of Walton's testimony as true and other portions of it as false than there would be for considering the excerpt false and the other part true. This sentence is in perfect harmony with the entire body of the testimony of appellant, coming from a number of witnesses, as to how the accident occurred; and can only be reconciled with appellee's version of it by considering all the other evidence of appellant on this point false. In my opinion the great preponderance of the evidence shows that appellee gave no stop signal; that the train had not stopped, but was moving slowly in obedience to

a slow signal given by appellee to Ross and properly communicated by him to the engineer; that Eckles negligently went under the coaches when the train was in motion, and that his own negligence was the proximate cause of his injury.

The verdict of the jury in this case was for $30,000. It is unnecessary for me to enter into any argument or cite authorities to show that it is excessive, for this is confessed by appellee's entering of a remittitur of one-third of it. When I consider the size of this verdict, confessedly $10,000 in excess of the damages sustained, I can not but conclude that it is the product of passion and prejudice. Being of this opinion, in view of my best judgment that on three essential issues (if the verdict upon them finds any support at all in the evidence) the finding of the jury is contrary to the overwhelming weight of the testimony, I am driven to the conclusion that the passion and prejudice of the jury influenced them in their finding on these issues as well as on the issue of damages. If a verdict is clearly the exponent of passion and prejudice, as I believe this one to be, it would be a denial and mockery of justice to let it stand. It is not for the appellee to say how much he will take from the appellant, but for a fairminded and impartial jury to determine from a consideration of the evidence, how much, if anything, he is entitled to under the law. When a fair and impartial jury have reached a verdict, such as they believe the law and evidence justify, then, if it should upon appeal be deemed excessive, it may be cured by a remittitur. But I do not believe that a verdict which is clearly the exponent of passion and prejudice can be cured in any other way than by setting it aside and holding it for naught.

For the reasons stated I have dissented from the opinion of the court affirming the judgment, and believe a rehearing should be granted and the cause remanded for another trial.

Writ of error refused.