## HASKINS v. PANHANDLE & S. F. RY. CO.
### No. 4515.

Court of Civil Appeals of Texas. Amarillo. Dec. 9, 1935.

Rehearing Denied Jan. 20, 1936.

Carl Ratliff, of Levelland, and Vickers, Campbell & Evans, of Lubbock, for appellant.

Terry, Cavin & Mills, of Galveston, and Madden, Adkins, Pipkin & Keffer, of Amarillo, for appellee.

HALL, Chief Justice.

Plaintiff, Haskins, appellant here, sued the Panhandle & Santa Fe Railway Company in Hockley county to recover damages resulting from personal injuries sustained by him in a fall from one of defendant's passenger coaches at the railway station in Levelland.

He alleges: That on February 8, 1935, while riding as a passenger, he alighted at the front of the train in Levelland, and, having left his pocketknife in the train coach, immediately requested the conductor to get it for him but the conductor instructed him to re-enter the train and get it himself. When he alighted the first time and then re-entered, the footstool was upon the ground and was used by him in alighting from and re-entering the coach. That, as he attempted to alight the second time, the footstool was tossed into the train hitting him on the leg, causing him to fall directly to the ground. His allegation is that one of the defendant's servants or employees threw the stool. He further alleges that the defendant was negligent in the following respects:

(1) In failing to render to plaintiff the proper care and caution due him under the circumstances as set out above.

(2) The said employee failed to assist him in coming down the steps, as was their custom and as he had done immediately prior thereto upon his first exit from the coach.

(3) Defendant was negligent in failing to leave the stool upon the ground for plaintiff's use, knowing that he was coming out immediately.

(4) In throwing said stool into the vestibule where, with the use of proper care and caution, the defendant, through its agent, knew or should have known that the plaintiff would be at the time with the purpose of descending said steps.

(5) Defendant was negligent in failing to keep a lookout for the plaintiff's return from inside the coach to descend the steps.

(6) The defendant was further negligent through its agent in failing to look before he threw said stool into the vestibule to ascertain if plaintiff was in the vestibule and ready to descend.

(7) The defendant was further negligent through its agent as aforesaid in failing to exercise the proper caution in serving its passenger, the plaintiff, and assisting him to alight from said train in the usual, regular, and customary manner, and in striking the plaintiff with said stool just as he turned in the vestibule to descend said steps.

No question is made as to the sufficiency of any material part of the petition. Plaintiff describes minutely how he fell and the injuries which he sustained.

The defendant company answered by general demurrer, general denial, and several affirmative defenses.

At the conclusion of the evidence, the defendant moved the court for a peremptory instruction in its favor. This motion was granted, and, from a verdict and judgment entered denying plaintiff any recovery, this appeal is prosecuted.

The plaintiff presents the case here upon three propositions. By the first he challenges the action of the court in peremptorily directing a verdict against him because he alleged that an employee of the company threw a stool in his way as he descended from the railroad coach as a passenger, striking him and causing him to fall, which resulted in injuries and damages, and that such act was negligent and the proximate cause of his injuries, and the evidence introduced in his behalf raised the issues of negligence, proximate cause, and damages.

By the second proposition he insists that the court erred in peremptorily instructing the jury because plaintiff pleaded, in substance, that defendant violated its duty to keep a lookout for him as he descended from its train upon which he was a passenger, and in failing to caution plaintiff as a passenger and in failing to leave the footstool upon the ground for his descent, and that such negligence was the proximate cause of his fall and injuries, and because the evidence was sufficient to raise each of the issues pleaded.

By the third proposition he insists that, because of the proper legal presumptions and inferences deducible from the direct evidence tending to show a right to recover,

it was plainly within the province of the jury to determine whether defendant's agent threw the stool into the train at the time he was about to descend, and, because the issues of proximate cause and damages were raised by ample testimony, the jury should have been permitted to pass upon the issues.

The appellee insists that, in the light of all the testimony, there was no room for ordinary minds to differ as to the conclusion to be drawn from it, that the evidence raised no issue which should have been submitted to the jury, and therefore the court did not invade the province of the jury when, viewing the evidence as a whole, he concluded it was insufficient to require him to submit the issues to the jury.

We think the court erred in directing a verdict.

In determining whether a peremptory instruction should be given, only the testimony supporting plaintiff's claim should be given consideration. Missouri, K. & T. Ry. Co. v. Cunningham, 118 Tex. 607, 23 S.W.(2d) 343, 352; Jones v. Jones (Tex.Civ.App.) 41 S.W.(2d) 496.

In Frazier v. Hanlon Gasoline Co. (Tex. Civ.App.) 29 S.W.(2d) 461, 471, it is said: "In passing upon a motion for an instructed verdict, the court cannot weigh the evidence, but is bound to consider to be true all evidence which supports the view of the losing party, and it must give him the benefit of all legitimate inferences which are to be drawn therefrom in his favor. It is the rule that the court must give the evidence its strongest probative force. Clutter v. Wisconsin Texas Oil Co. (Tex. Civ.App.) 233 S.W. 322 (error refused)."

To the same effect is the holding of this court in the Jones v. Jones Case, and, as supporting the rule, Judge Jackson cites Roddy et al. v. Citizens' State Bank (Tex. Civ.App.) 11 S.W.(2d) 652; Willis & Conner v. Turner (Tex.Civ.App.) 25 S. W.(2d) 642; Henry v. Publix Theatres Corporation (Tex.Civ.App.) 25 S.W.(2d) 695; Henderson v. Burkholder (Tex.Civ. App.) 29 S.W.(2d) 937.

In the Missouri, K. & T. Ry. Co. v. Cunningham Case, supra, the certificate from the Court of Civil Appeals set out at length the testimony of various witnesses bearing upon the questions certified. From this testimony Judge Short concluded that it was sufficient to raise the issue of discover-

ed peril, and said: "If the evidence embraced in the certificate, viewed in the most favorable light, substantially supports the material allegations on this subject, in the petition of the appellees then question No. 1 must be answered in the affirmative."

Question No. 1 in the certificate is: "Is there any evidence raising the issue of discovered peril?"

▆ In the light of these declarations, we will briefly set out some of the testimony bearing upon the several issues.

The plaintiff, Haskins, testified that he was a passenger on the train from Lubbock to Levelland on the day he was injured; that, when he arrived at Levelland, "I got off the train and at the time I got off the train I taken a few steps from the train and missed my knife and turned around to the conductor and asked him if he would go get it. He said, 'Go get it yourself,' and I went in and got it."

He further testified that he used the footstool in leaving the train the first time and in re-entering it to get his knife. With reference to leaving the train the second time, he said:

"Just as I got out of the train and started out, this footstool lit in there and tripped me, hit my left foot, and I fell out on the ground. I think it hit my foot before it hit the platform.

"Q. Was it coming towards your foot? A. Yes, sir. As I came out of the coach to go off the steps, as I turned around it hit my left foot. * * * I fell plumb out on the ground and hit on my back and leg and hip-like, in a kind of doubled up position, as well as I remember."

He further testified that he was then carried into the station and from there to Dr. Lusk's office and placed on a cot, where he remained five or six hours, and while there he vomited twice and had severe pains in his back, legs, and hip; that he hurt all over and was sick at his stomach; that he remained in bed for about a week, and was removed to the hospital in Lubbock, where he remained five or six days. He described his injuries, stated that his income had been about $1,000 a year, and that prior to his fall he was a healthy man.

With reference to the identity of the man who threw the stool, which, according to appellee's contention in the trial court, was one of the principal grounds for their insistence that the court should peremp-

torily instruct the jury, plaintiff's cross-examination is, in part, as follows:

"Q. If there was not anybody by the coach opening, did the man next to the depot throw that in there and hit you? A. As I came out of the coach a man came down the train and as I stepped out he threw this thing and this man was standing looking toward me and I called to this man to help me up. He came to me and helped me up.

"Q. You say a man came down by the train. Who was that man? A. I don't know who it was.

"Q. Was it one of the train men? A. I don't know; I suppose so by him picking that up (the footstool)."

The witness Otis testified:

"Well, this train was stopped as I walked up just before I got to the depot. I wasn't paying much attention to anything and looked around and saw somebody putting the stool up in there and somebody tumbling out.

"Q. Was there a man had the stool? A. Yes. sir.

"Q. Tell the jury whether or not this man picked up the stool on the ground on the outside of the train. A. Well that was just as I came up he threw one up on the platform.

"Q. Did he sail it up in there? A. Just looked like he slung it up in there and just as he did he came falling out.

"Q. Was that Mr. Haskins, the plaintiff in this case, that fell out? A. Yes, sir."

On cross-examination:

"Q. And you say they walked out and picked him up, didn't you? A. Well, I didn't. I didn't see them two men that walked out of the depot and picked him up.

"Q. And they carried him into the depot? A. Yes, sir.

"Q. They are the two men that carried him in there? A. One that carried him in the depot was the one that put the footstool up in there that was standing there when Mr. Haskins fell out."

The witness Stegall testified:

"I saw a man getting off the train and as he started off the train he fell over a stool there that a guy pitched up there and he fell. He and the stool all fell to the ground in a doubled up position.

"Q. Did you see the stool fall? A. Yes, sir, sure did."

The witness Wright "allowed" that they were all train men standing there where the man fell.

The witness Copeland, one of plaintiff's witnesses, said that the man who pitched the stool "was a train man from his looks, the badge on his hat and all." He further testified as to the evidence of plaintiff's injuries, pain, etc. On cross-examination, Copeland identified rear brakeman Minor as the man who threw the stool up into the vestibule of the coach and struck plaintiff.

Medical testimony was introduced, describing the kind and extent of plaintiff's injuries.

Conductor Thompson denied throwing the stool up in the coach himself, but says that after Haskins descended the first time he set the stool up in the train and started into the depot, that he gave Haskins permission to go back in the train to look for his pocketknife immediately after he had descended the first time, and that Haskins then went into the train while witness went into the depot.

Brakeman Minor, a member of the train crew, was standing there and assisted Haskins into the station.

Brakeman Minor, whom Copeland said threw the stool, testified that he was in the baggage car at the time of the accident, and went to the scene through the train and out the end of the passenger coach. He admitted that he assisted Haskins into the station, and Ray Conner testified that Minor was on the station platform at about the time Haskins fell.

The station agent, Pickard, denied that Minor was there or assisted in carrying Haskins into the station. He said that he and the conductor, Thompson, carried Haskins in.

Miss King, a high school pupil, a passenger, and a witness for the defendant, said that she did not remember Minor's being inside the train, and that no one was in the train that she could remember right after the fall.

We think this testimony is sufficient to have required the trial judge to submit the issues to the jury.

■ It appears that the representative of the defendant railway company saw Haskins shortly after the fall, and, while he was still at Levelland, on February 8th, took a written statement from him. Some excerpts were introduced in evidence, one of which is as follows: "I returned and on coming back out of the train I slipped and fell over the step on the rear of the train and fell to the ground."

This court said in Gallaher v. United States F. & G. Co., 77 S.W.(2d) 312, 315:

"If there are any inconsistencies or contradictions between the statement which appellant made while he was in the hospital and his subsequent testimony upon the stand, they simply present a conflict which it was the prerogative of the jury to settle. It is not such a judicial admission as would warrant the court in instructing a verdict against appellant or in entering judgment notwithstanding the verdict.

"In the case of Herd v. Wade (Tex. Civ.App.) 63 S.W.(2d) 253, 257, the same contention was made and contradictory statements made by Mrs. Wade were urged as a basis for the court's action. From her former testimony, a stenographic report taken at a previous trial was read. In disposing of the contention, we said: 'If it be admitted that she had made inconsistent statements and that her positive testimony on a former trial was in conflict with her testimony upon this trial, nevertheless the court would not have been justified in directing a verdict. The credibility of a party who testifies is for the consideration of the jury, though he has made contradictory statements, for the jury may believe one part of a party's testimony and refuse to believe another.'

"In addition to the authorities there cited, the same rule is announced in Katz v. Nix (Tex.Civ.App.) 42 S.W.(2d) 801; Williams v. National Bank of Commerce (Tex.Civ.App.) 62 S.W.(2d) 1108, and authorities cited; Daggett v. Corn (Tex. Civ.App.) 54 S.W.(2d) 1098."

Also Williams & Chastain v. Laird (Tex. Civ.App.) 32 S.W.(2d) 502; International & G. N. Ry. Co. v. Ives, 34 Tex.Civ.App. 49, 78 S.W. 36; Heierman v. Robinson, 26 Tex.Civ.App. 491, 63 S.W. 657; Young v. Blain (Tex.Com.App.) 245 S.W. 65; Gulf, C. & S. F. Ry. Co. v. Higginbotham (Tex. Civ.App.) 173 S.W. 482; Galveston, H. & S. A. Ry. Co. v. Eckles, 25 Tex.Civ.App. 179, 60 S.W. 830.

For the reasons stated, the judgment is reversed, and the cause remanded.