## JOHNSON v. AGRICULTURAL BOND & CREDIT CORPORATION.

### No. 4841.

Court of Civil Appeals of Texas. Amarillo.

Jan. 10, 1938.

Rehearing Denied March 7, 1938.

386

W. H. Russell, of Hereford, and Aldridge & Aldridge, of Farwell, for appellant.

H. H. Cooper, of Amarillo, for appellee.

JACKSON, Chief Justice.

This appeal is prosecuted by W. L. Johnson from a judgment in the sum of $2,500, with interest and cost, and for the foreclosure of a chattel mortgage obtained against him in the district court of Parmer county by the Agricultural Bond & Credit Corporation, organized and authorized to transact business under and by virtue of the laws of the state of Delaware.

The sufficiency of the pleadings of neither party is questioned by the other, so we deem it necessary to state only relative thereto that appellee's alleged cause of action is based on a note for the sum of $1,825.20 and a chattel mortgage lien securing the payment thereof executed by appellant on June 23, 1932. The note is payable to the Curtis Harvester Corporation of Ottowa, Kan., thirty days after date, and it and the lien are alleged to have been acquired from the owner by appellee for a valuable consideration before maturity.

The appellant answered that the note and mortgage were given to the Curtis Harvester Corporation for two certain late model Curtis combines, manufactured and sold for the purpose only of cutting and threshing wheat or other grain, and the combines, if not expressly, were impliedly, warranted to perform the purposes for which they were made and sold. He sets out the details of the transactions and agreements out of which he claims the note

and mortgage originated, says the combines ordered were never delivered, the consideration therefor failed, the indebtedness had its inception in fraud, the machines were so defective that neither he nor the agents of the Curtis Harvester Corporation could remedy the defects so the combines would cut and thresh grain; the implied warranty was breached; that appellee acquired such instruments after the maturity of the note, and, therefore, was not a purchaser in good faith.

The court at the close of the testimony peremptorily instructed the jury to find for appellee, and on the verdict returned in obedience to such instruction the judgment was entered. The action of the court in directing a verdict against him constitutes the basis of appellant's assignments of error.

The note and mortgage on which the suit is prosecuted are dated June 23, 1932. There is an instrument in the record, dated July 1, 1932, which recites that "For value received" the note and mortgage are sold and assigned to the Agricultural Bond & Credit Corporation by the Curtis Harvester Corporation.

Mr. Lookingbill, the soliciting agent for the Curtis Harvester Corporation, testified in substance that he secured a written application or order from the appellant Johnson in the spring or summer of 1931 for the purchase of two of the late model Curtis combines; that he kept a copy, gave Johnson a copy, and delivered a copy to the company, but such order was not binding until accepted by the corporation, and shortly after the order was sent in, two combines were shipped to Mr. Johnson, but they were the old model, and not the machines for the purchase of which the order and application had been made; that when the machines arrived at Black, a station on the Santa Fé Railway, and were unloaded, Mr. Latimer, the general manager of the Curtis Harvester Corporation in this country, was present and stated the company was unable to furnish the combines ordered, but would stand behind those shipped, and if they did not do the work the machines would remain the property of the corporation; that the combines were sold on deferred payments, and in the fall of 1932 some men traveling in a Ford roadster on the side of which was painted "Curtis Harvester Company" came and asked him about Mr. Johnson and some others who had ordered combines through him, and he knew they were collecting for

the Curtis Harvester Corporation. This order was not introduced in evidence by either party.

The appellant testified in substance that he ordered two late model combines through Mr. Lookingbill from Curtis Harvester Corporation, and two were shipped to him a few days after June 16, 1931, on which date he signed, at the request of Mr. Latimer, a sales contract for what he understood was the late models theretofore ordered; that when the machines arrived he discovered they were not the late models ordered and refused to accept them; that Mr. Latimer, who was the manager of the company, was present, admitted the combines shipped were not the models ordered, but said if appellant would try them, the company would guarantee such combines to cut and thresh his grain and wheat; that the company had a man who could make them work and give satisfaction, and if the machines did not work satisfactorily, the company would, before another harvest, replace them with the late model; that his wheat was ready to cut and, on this guaranty and these promises, he accepted the machines for trial, but after a diligent effort was unable, because of their defects, to cut and thresh either his wheat or other grain with them; that he notified the Harvester Corporation, which, after numerous efforts, failed to correct the defects or make the machines perform the services for which they were manufactured and for which he wanted them. He said that some time in June, 1932, Mr. Latimer came to his home with some blank notes and blank mortgages and agreed to replace the combines he had conditionally accepted with the new models if appellant still wanted the machines. After some discussion it was agreed that he should receive credit on the new model machines for the $600 he had paid for those shipped in 1931 and $75 to return and load on the train at Hereford the old model machines he had accepted conditionally in 1931, and the old notes and mortgage would be returned to him; that in conformity with this agreement, he executed this note and mortgage in blank because Mr. Latimer said he did not have the description with him of the late model combines, but assured him that the proper description would be filled in when the machines arrived; that the new combines for which he executed said note and mortgage were never shipped by the corporation and never received by him. He further stated that in October thereafter a man came to his home driving a roadster automobile on which was painted the sign "Curtis Harvester Company," who showed him the note sued on and told him he was collecting for the Harvester Company; that he explained to this man what had occurred between him and the agents of the corporation relative to the purchase of combines and told him of the last transaction had with Mr. Latimer, and since the new models had never been received he would not pay the note; that appellee in this case never came to him or tried to collect from him the note prior to 1933.

Walter Johnson, the brother of appellant, while testifying, stated that a man driving a car with "Curtis Harvester Company" painted on it came to appellant's home in September or October, 1932, trying to collect the note, and that this man was one of those who tried to repair the defects in the old model combines when his brother was attempting to cut and thresh grain with them in 1931.

The testimony in the record indicates that the combines delivered in 1931 were subjected to a fair trial by appellant, but that neither he nor the agents of the Curtis Harvester Corporation could make them successfully operate, and that such combines were valueless for any purpose, except to cut and thresh grain.

In Jackson v. Langford, 60 S.W.2d 265, 267, this court held: "It was reversible error for the court to direct a verdict: 'If, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff.' Gross v. Shell Pipe Line Corp. (Tex.Civ.App.) 48 S.W.2d 377, 378, and authorities cited. To the same effect is Jones et al. v. Jones (Tex.Civ.App.) 41 S.W.2d 496, and authorities cited."

See, also, Texas Employers' Ins. Ass'n v. Ritchie, Tex.Civ.App., 75 S.W.2d 942, 943; Haskins v. Panhandle & S. F. Ry. Co., Tex.Civ.App., 89 S.W.2d 831.

If we follow the law announced in these cases relative to the authority of the court to peremptorily instruct a verdict and discard the testimony in behalf of appellee, give credit to the testimony in behalf of appellant, and indulge the legitimate conclusions to be drawn therefrom, the jury might find in appellant's favor, and the court was

not warranted in directing a verdict against him.

Should it be determined that there was no express warranty, still, in our opinion, the record discloses a fact issue on the question of breach of an implied warranty, since the evidence tends to show that the combines would not reasonably perform the service of cutting and threshing grain—the purpose for which they were manufactured and sold.

In W. W. Kimball Co. v. Parson, Tex.Civ.App., 49 S.W.2d 821, 822, it is said: "The law is that, in the absence of an express warranty, either verbal or written, there is an implied warranty that the article sold is fit for the purposes intended and adaptable to the use for which it was sold."

In Turner & Clayton, Inc., v. Shackelford, 288 S.W. 815, 816, the Commission of Appeals says: "It is well settled that, where an article is sold for a special use, there is an implied warranty that it is suitable for such intended purpose."

If machinery is purchased directly from the manufacturer thereof, the seller impliedly warrants that such machinery is reasonably fitted for and will reasonably perform the services for which it was manufactured and sold. E. F. Elmberg Co. v. Dunlap Hardware Co., Tex.Com.App., 267 S.W. 258; Price v. Advance Rumley Thresher Co., Tex.Civ.App., 264 S.W. 113; Oil Well Supply Co. v. Texanna Production Co. et al., Tex.Civ.App., 265 S.W. 203.

The question of the purchase by appellee of the note sued on before maturity making it a holder in good faith, article 5935, § 52, R.C.S., is also a controverted fact issue. The testimony in the record tends to show that appellee did not acquire the note before its maturity, since it was due July 23, 1932, and was still in the possession of the agent of the Curtis Harvester Corporation in September or October thereafter, at which time he was endeavoring to collect it for said corporation.

The testimony also discloses as fact issues to be determined by the jury the questions of partial failure of consideration, the right to rescind the contract for fraud, Industrial Acceptance Corporation v. Corey et al., Tex.Com.App., 29 S.W.2d 978, and if not for fraud, then on the issue of a rescission and cancellation of the original contract to purchase by agreement made at the time the note and mortgage sued on were executed by appellant, the considera-

tion for which last contract, under appellant's testimony, failed.

The judgment is reversed and the cause remanded.

### On Motion for Rehearing.

In a motion for rehearing appellee asserts that this court erroneously reversed the judgment of the trial court, since the record shows it acquired the note and mortgage from the Curtis Harvester Corporation by a written assignment, which is conclusive as to its right to recover thereon because neither the execution of the assignment nor its validity was put into controversy by a verified plea, and the court correctly directed a verdict in its behalf.

It relies on article 573, which reads as follows: "When suit is brought by an assignee or indorsee of a written instrument, the assignment or endorsement thereof shall be held as fully proved, unless the defendant shall file with the papers in the cause an affidavit stating that he has good cause to believe, and does believe that such assignment or endorsement is forged."

The appellant does not claim that the assignment was a forgery or that it was not fully proved. His contention is, and he alleged, among other things, that the note and mortgage were obtained through fraud by the Curtis Harvester Corporation; that the consideration for the note failed; and that appellee acquired it after maturity, and therefore is not an assignee or indorsee in due course. He offered no proof to show that the assignment was a forgery or that it was insufficient to pass to appellee whatever right the Curtis Harvester Corporation, the assignor, had to collect the note and mortgage, but he introduced evidence tending to prove the note and mortgage were obtained by appellee after maturity; hence, in our opinion, article 573 has no application and does not justify the peremptory instruction given by the trial court. The statute does not stipulate that, unless the affidavit is filed, the assignment shall prove that the assignee is a holder in due course.

In Mayfield Grocer Co. v. Andrew Price & Co. et al., 43 Tex.Civ.App. 391, 95 S.W. 31, 32, writ refused, the court said: "The effort here is not an attempt to negative the assignment and delivery of the notes to plaintiff, but assumes such assignment and delivery, and undertakes to show that they took place under such circumstances as charged plaintiff with equities or rights of

a prior indorser. It admits that plaintiff holds the notes by transfer, but claims that, in its hands, the notes are subject to plaintiff's equity. We know of no statute that requires such matter to be pleaded under oath."

See, also, Dodson et al. v. Isensee et al., Tex.Civ.App., 273 S.W. 634, writ dismissed.

While appellant did not claim that the assignment was forged or insufficient, he did verify his answer by an affidavit in the following language: "The defendant, W. L. Johnson, being duly sworn says that he had read the foregoing answer and the allegations therein contained, especially with respect to the failure of consideration for said notes sued on, are true in substance and in fact."

This, in our opinion, considered with the allegations in his answer, would have been a substantial compliance with the statute if verification had been necessary. Lowden v. Stahl et al., Tex.Civ.App., 260 S.W. 1059.

The motion is overruled.