## HOOD v. HOOD et al.
### No. 5308.

Court of Civil Appeals of Texas. Amarillo.
June 2, 1941.

Rehearing Denied June 30, 1941.

248

Vickers & Campbell, of Lubbock, for appellant.

Crenshaw, Dupree & Milam, of Lubbock, for appellees Inez N. Hood and H. S. Hood.

John L. Ratliff, of Lubbock, for appellee B. T. Hambright.

STOKES, Justice.

Appellant and appellee, H. S. Hood, were married April 2, 1914, and continued to live together as husband and wife until they were divorced at the suit of appellant on the 8th of June, 1935. During the coverture they acquired, as community property, lots Nos. 13 and 14, in block No. 2, of the Dupree Addition to the City of Lubbock, which they utilized as a homestead until they were divorced. In the divorce decree, based upon the agreement of the parties, this property was decreed to appellant, subject to the balance due upon a vendor's lien note which had been executed by H. S. Hood as part of the purchase price. It was further decreed that appellee, H. S. Hood, should contribute $15 per month to the support of the minor children until they became sixteen years of age and that he should be primarily liable for the outstanding indebtedness on the property. On June 24, 1936, appellant, Ada Hood, and appellee, H. S. Hood, entered into a written contract by the terms of which appellant agreed to convey to him a concurrent life estate in the property in consideration of his paying the balance due on the original purchase price and also to pay appellant $30 per month during her lifetime or as long as she remained a single woman. In this contract it was also agreed that, upon final payment of the purchase price, the parties would cause a deed to be executed conveying the remainder to their four daughters, subject only to the life estates of appellant and her former husband, H. S. Hood. Appellee H. S. Hood continued to pay the monthly installments of $21 on the vendor's lien note as they became due until about January, 1937, when he filed a suit against George E. Benson, the holder, for cancellation of the lien, alleging that the note had been paid in full. In his answer, Benson included a cross-action in which he sought judgment for the balance due on the note and a foreclosure of the vendor's lien. That suit resulted in a judgment against Hood in favor of Benson for a balance due on the note of $636 and foreclosure of the vendor's lien. Instead of having an order of sale issued and the property sold, however, Benson and Hood agreed to an adjustment of the matter under which Hood was to pay the judgment at the rate of $25 per month, the payments to be made on the 5th of each month. On February 5, 1938, in consideration of the payments made, Benson released lot No. 14 from the judgment and on February 24, 1938, Hood married his present wife, the appellee, Inez Hood. He continued the monthly payments on the judgment until April 5, 1938, when default was made and Benson then had an order of sale issued and placed in the hands of

the constable for execution. The constable levied on the property and advertised it for sale on the 7th of June, 1938. Pending the sale, appellee, B. T. Hambright, purchased the judgment and it was duly assigned to him by the judgment creditor, George E. Benson. The property was sold by the constable in accordance with the advertisement and Hambright became the purchaser for a consideration of $347. Within a day or two after the sale, Hambright conveyed lot No. 13 to appellee, Inez Hood, for a consideration of $546, the entire amount evidenced by a promissory note payable in monthly installments of $26 each, bearing interest at the rate of 10% per annum, the first installment to become due on July 5, 1938, and one installment due on the 5th of each succeeding month until the entire note and interest were extinguished. The deed provided that the consideration was to be paid out of the separate funds of Inez Hood and that the property was conveyed to her as her separate and individual property.

This suit was instituted by appellant against H. S. Hood and his second wife, Inez Hood, and B. T. Hambright to recover the title and possession of the life estate in the one-half undivided interest in Lot No. 13 which was retained by her in the contract that was executed between her and H. S. Hood on the 24th of June, 1936, in which it was agreed that she and H. S. Hood should have a life estate therein and the remainder to be conveyed to their four daughters. In the alternative, she sued all of the appellees for damages. Among other things appellant set up the contract between her and H. S. Hood of June 24, 1936, and alleged that the same had been complied with by both parties for a short period of time and that, on February 4, 1938, H. S. Hood had obtained a release of Lot No. 14 from the vendor's lien held by Benson. She alleged that appellee Hood married his present wife, the appellee Inez Hood, in February, 1938, and that a short time after their marriage, they conspired to circumvent the contract and unlawfully to deprive appellant of her interest in the property by defaulting in the payment of the monthly installments, precipitating a foreclosure of the vendor's lien, and purchasing the property for themselves at the foreclosure sale. She alleged that, in order to assist them in their unlawful purpose, they enlisted the assistance of B. T. Hambright who agreed to purchase the judgment from Benson and then purchase the

property at the constable's sale, after which he would convey it to Inez Hood for a consideration far below its value. She alleged that she was the owner of a life estate in an undivided one-half of lot No. 13 which she alleged was of the value of $2,000, and that by reason of the fraudulent scheme entered into by appellees to deprive her of the property, appellee Inez Hood and her husband, H. S. Hood, became constructive trustees and were holding the property for her benefit.

A jury was impaneled to try the case but at the close of the testimony, upon motion of appellees, the court instructed the jury to return a verdict in favor of appellant against H. S. Hood for the sum of $450; that she recover of H. S. Hood his life estate in lot No. 14 upon his disclaimer; that they return a verdict against appellant and in favor of appellee, B. T. Hambright, on her claim against him for damages, and in favor of appellee, Inez Hood, for the fee-simple title to lot No. 13 and an undivided one-half interest in lot No. 14, which had been conveyed to her by two of the daughters of H. S. Hood and appellant, subject to a life estate in appellant and also against appellant and in favor of appellee, Inez Hood, on the claim of appellant against her for damages. The jury returned a verdict in accordance with the instruction of the court and judgment was rendered accordingly. Appellant duly excepted to the judgment, gave notice of appeal, and has brought the case to this court for review.

There are a number of assignments of error and propositions of law contained in the brief but we do not deem it necessary to discuss them in detail. The principal contention of appellant relates to the peremptory instruction given to the jury by the court, the contention being that, for a number of reasons the court erred in instructing a verdict in favor of appellees. The rule is established by a long line of decisions of the courts of this state that it is reversible error to give to the jury a peremptory instruction in favor of the defendant, if, discarding all adverse evidence and giving credit to all the evidence favorable to the plaintiff and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff. Wininger v. Fort Worth & D. C. R. Co., 105 Tex. 56, 143 S. W. 1150; Texas Employers Ins. Ass'n v. Ritchie, Tex.Civ.App., 75 S.W.2d 942;

Jackson v. Langford, Tex.Civ.App., 60 S. W.2d 265; Haskins v. Panhandle & S. F. R. Co., Tex.Civ.App., 89 S.W.2d 831.

The record shows that the property involved had constituted the homestead of appellant and appellee, H. S. Hood, during a long period of their coverture and was their homestead at the time of the divorce decree in 1935. In the decree of divorce, based upon an agreement of the parties, this property was decreed to appellant and appellee H. S. Hood was divested of all interest therein. It seems that, regardless of their separation and divorce, they both, for a time thereafter, occupied the former homestead and ultimately entered into a contract by the terms of which appellant agreed to convey to her former husband a life estate therein upon consideration that he discharge the balance due on the vendor's lien note which had been given as part of its purchase price when they acquired it, and pay her $30 per month during her lifetime or as long as she remained a single woman. In this contract both parties agreed that, subject to a life estate in each of them, the property should be conveyed to their four children. H. S. Hood continued to pay the monthly installments on the vendor's lien note as they became due until some two months after he married his present wife, the appellee Inez Hood, in February, 1938. He defaulted in the payment that was due April 5, 1938. Appellant testified that in the spring of 1938, after her former husband had married Inez Hood, she had a conversation with Inez in which Inez told her that appellant was going to lose the property and that Inez was going to get it. She said she asked Inez how she would get it and that Inez told her she would get it through her marriage to Mr. Hood. She said Inez told her that, if it had not been for her (Inez), Mr. Hood would have gone ahead and paid for the property and "just dumped it in my lap; but that she (Inez) was smart enough to get around that." It was shown by the testimony that some time after the property was advertised for sale but before the date upon which the sale was to be made, appellee, Inez Hood, had a conversation with appellee Hambright in which she informed him that the property was to be sold on June 7th and that she wanted to purchase it at the sale. She requested Hambright to loan her the money with which to pay for the property but this was declined by Hambright. The record further shows that on June 4, 1938, three days before the sale took place, Hambright purchased the judgment from George E. Benson and then bought the property at the constable's sale. Almost immediately thereafter Inez Hood approached Hambright with a proposition to purchase the property from him and the negotiations resulted in his conveying it to her for a consideration. of $546, which was $199 more than he paid for it at the constable's sale. The entire consideration was evidenced by a vendor's lien note signed by appellee, Inez Hood, and her husband, H. S. Hood, payable in monthly installments of $25 each, the first installment due July 5, 1938, and one installment due on the 5th of each succeeding month. The testimony further showed that the property was of a value of about $2,500. The note was paid according to its terms and Hambright executed a release of the vendor's lien. The sale by Hambright to appellee, Inez Hood, took place the next day after Hambright purchased the property at the constable's sale and Hambright testified that before he purchased the property Inez Hood talked with him about it and suggested that he buy it in and then sell it to her. He said that he might have agreed to that but that, in the meantime, he told her that, if he purchased the property at the constable's sale, it would be his property and he could do as he pleased with it. Appellee, Inez Hood, testified that she made an effort to borrow the money from Hambright to purchase the property at the constable's sale, but that he declined to loan it to her. She said she then decided to let it sell, which she did, and that Hambright bought it for her. A significant circumstance shown by the testimony is that H. S. Hood was earning a salary which was payable to him semimonthly, on the 5th and 20th days of each month, and that the installments on the Hambright note were made to fall due on the 5th of each month. This was the due date of the installments of the vendor's lien note held by Benson and the testimony shows that the arrangement with Benson was thus made in order that H. S. Hood might be in position to pay the installments at the time he collected a portion of his salary. This was significant upon the question of whether or not it was really the purpose and intention of the parties, especially Inez Hood, that the Hambright note would be paid from the separate funds of Inez Hood.

■■■ Appellees introduced considerable evidence tending to refute the charges made against them by appellant and to explain their conduct in the entire transaction, but, in view of the peremptory instruction, and under the rule of law above mentioned which, we think, controls the disposition which we must make of the appeal, all of the testimony of this nature should be discarded and only the testimony favorable to appellant should be considered. The record shows that H. S. Hood continued to pay the monthly installments due on the note held by Benson until a short time after his marriage to appellee, Inez Hood. On April 5, 1938, some two months after his marriage to her, he defaulted and shortly thereafter his second wife, Inez, told appellant, in effect, that if it had not been for her (Inez), Hood would have continued his payment of the installments and ultimately paid for the property. According to appellant's testimony Inez told appellant, in effect, that the result would have been to dump the property in appellant's lap but that she (Inez) was smart enough to get around that. It is further indicated in the testimony that appellee, Inez Hood, shortly thereafter began negotiations with Hambright in an effort to borrow sufficient money to purchase the property at the constable's sale, and, failing in this, she procured Hambright to purchase the property at the sale and then convey it to her for a profit to him of approximately $200. The testimony warrants the conclusion that H. S. Hood acquiesced in the conduct of his wife, Inez, and so conducted himself as to assist her in the scheme which she revealed to appellant and which, without fault of appellant, resulted in property of the value of approximately $2,500 being conveyed to her for a consideration of $546. Appellant was thus divested of a substantial interest in the property and all of it was acquired by appellee, Inez Hood, for a consideration far below its value. Under the testimony the jury would have been warranted in reaching these conclusions and if they had done so a judgment in favor of appellant under the doctrine of constructive trusts would necessarily have resulted. That this would have been a fraud upon appellant and resulted in material injury and damage to her, as well as material gain and profit to appellee, Inez Hood, cannot be questioned. The law is well established that whenever the legal title to property has been obtained through fraud or under any circumstances which make it unconscientious for the holder of the legal title to retain the beneficial interest therein, equity impresses a constructive trust in favor of the one who is entitled thereto and a court of equity has jurisdiction to reach the property in the hands of the wrongdoer. Pomeroy's Equity Jurisprudence, 4th Ed., Vol. 4, Sec. 1053; Hill v. Stampfli et al., Tex.Com.App., 290 S.W. 522; Martin v. Martin, Tex.Civ.App., 130 S.W.2d 863.

■■ There is another reason why the court was not warranted in giving the peremptory instruction in this case. The principal portion of the testimony by which appellees sought to counteract the contentions of, and the testimony offered by, the appellant and to justify the acquisition of the property by Inez Hood in the manner in which she acquired it, came from the appellees themselves. Without their testimony there would have been no basis for ignoring the case made by appellant's evidence and rendering judgment in their favor. While this question is not discussed by appellant in her brief, yet it is an elementary rule that the jury is not required in all cases to accept the testimony of parties who are interested in the subject matter of the litigation and since their testimony may be disbelieved by the jury, it is error to give an instructed verdict thereon. This is especially true where the evidence is not fully satisfactory and free from doubt. Sturtevant v. Pagel, 134 Tex. 46, 130 S.W.2d 1017; Texas Employers' Ins. Ass'n v. Humphrey, Tex.Civ.App., 140 S.W.2d 313; Moore v. Conway, Tex.Civ. App., 108 S.W.2d 954, 955, and authorities there cited; Sigmond Rothchild Co. v. Moore, Tex.Com.App., 37 S.W.2d 121; Clem v. Fulgham, Tex.Com.App., 14 S.W. 2d 812.

Because of the error of the court in giving to the jury a peremptory instruction, the judgment will be reversed and the cause remanded.